**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

OTHRE E. BURNETT, et al.,     *
                             *

       Plaintiffs,          *

                             *

v.                         *          **CIVIL ACTION NO.:**

                             *          **2:08-cv-150-MHT-WKW**

ALBANY INTERNATIONAL, et al.,    *

                             *

       Defendants.        *

                             *

### DEFENDANT CRANE PUMPS & SYSTEMS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO SEVER AND FOR MORE DEFINITE STATEMENT

COMES NOW Defendant, CRANE PUMPS & SYSTEMS, INC., and respectfully submits this Memorandum in Support of its Motion to Dismiss this action pursuant to Rule 12(b)(6) for lack of subject matter jurisdiction, failure to comply with Alabama's statute of limitations and failure to state a claim upon which relief may be granted, or in the alternative, Motion to Sever and for More Definite Statement. Defendant would respectfully show the Court the following:

### STATEMENT OF FACTS

This personal injury action involves the claims of nine (9) plaintiffs (referred to collectively as "Plaintiffs") against seventy-three (73) defendants (referred to collectively as "Defendants"), including Crane Pumps & Systems, Inc. The Plaintiffs, including living plaintiffs who assert personal injury claims and plaintiffs' representatives who assert wrongful death claims, contend generally that they or their decedents have been "continually exposed to asbestos containing products, produced, manufactured, specified for use, installed, distributed, sold and/or placed into the stream of commerce by

defendants….." (Complaint, ¶¶ 1-9.)  Plaintiffs then provide a generic list of products that

they claim each plaintiff or decedent was exposed to at various worksites.  (Complaint, ¶¶

1-9.)

## ARGUMENT

### I.    PLAINTIFFS COMPLAINT IS DUE TO BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.

Recently the U.S. Court of Appeals for the Eleventh Circuit affirmed the

dismissal of an asbestos complaint for lack of subject matter jurisdiction. *See Beavers vs.*

*A.O. Smith Electrical*, Nos. 06-15401 and 07-11401 (11th Cir. February 13, 2008); a

copy of the slip opinion is attached hereto as <u>Exhibit 1.</u> The Beavers Complaint was filed

by the same plaintiffs' counsel as in the present case, and that Complaint is nearly

identical to the Complaint in this case.  The Eleventh Circuit affirmed the dismissal of the

Beavers Complaint on two grounds:  (1) the Plaintiffs alleged only the residency, not the

citizenship of the Plaintiffs; and (2) Plaintiffs failed to allege that each individual

Plaintiff's claims met the amount in controversy required.

As explained in the Eleventh Circuit's opinion, "[C]itizenship, not residency, is

the key fact that must be alleged in the complaint to establish diversity for a natural

person." *Id.*  at 13. (quoting Taylor v. Appleton, 30 F. 3d 1365, 1367 (11th Cir. 1994)).

Additionally, "where multiple plaintiffs allege claims in the same complaint, the

complaint must allege that the claims of each individual plaintiff meet the amount in

controversy requirement." *Id.*

In the present case, Plaintiffs only allege residency and not their states of

citizenship.  By not asserting the citizenship of each plaintiff, the Plaintiffs have failed to

establish that this Court has subject matter jurisdiction.  Furthermore, in asserting

diversity as the basis of subject matter jurisdiction, Plaintiffs generally state in the Complaint that "[t]he amount in controversy, exclusive of interests and costs, exceeds $75,000.00 and is within the jurisdiction of the court." (Complaint at p. 6.) There are no allegations that the claims of each individual plaintiff meet the amount in controversy requirement.  Because the plaintiffs' claims arise out of their separate exposure to asbestos at different locations over different time periods, the plaintiffs were required to allege that each individual plaintiff's claims met the amount in controversy requirement. *Beavers,* slip op. at 14.

In *Beavers*, the Eleventh Circuit affirmed dismissal of a Complaint for lack of subject matter jurisdiction when the only possible jurisdictional basis was diversity and the complaint failed to allege the citizenship of each plaintiff and failed to assert that the amount in controversy requirement was met for each plaintiff's claims.  In this case, Plaintiffs' Complaint is also due to be dismissed for lack of subject matter jurisdiction for these same reasons.

## II.      PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED PURSUANT TO 12(b)(6) AND 8(a) OF THE FEDERAL RULES OF  CIVIL PROCEDURE.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Plaintiffs' Complaint should be dismissed because it fails to state a claim upon which relief can be granted.  The allegations contained therein are inadequate and essentially comprised of a series of broad statements directed at all defendants without any clarification.  Such "blanket pleadings" deny Crane Pumps & Systems, Inc. of any meaningful opportunity to investigate the Plaintiffs' claims and prepare a meaningful response.  A complaint which on its face is vague and ambiguous does not constitute a well pled complaint. *See*,

*generally*, *Byrne v. Nezhat*, 261 F.3d at 1128-1131 (11th Cir. 2001). The Complaint in this case fails to specify where, when or how the individual plaintiffs and/or their decedents were allegedly exposed to asbestos or which of the numerous Defendants are responsible for the alleged exposure and resulting injuries. Simply stating where each plaintiff or each plaintiff's decedent worked, the dates of employment and a generic list of products that each Plaintiff worked with is not enough. As such, the Complaint fails to state a claim upon which relief may be granted and is due to be dismissed.

Federal Rule of Civil Procedure 8(a) requires that a pleading which sets forth a claim for relief must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Additionally, each averment in a complaint must "be simple, concise and direct." *Id*. "However, conclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent a motion to dismiss." *Jefferson v. Lead Industries Ass'n, Inc.*, 106 F.3d 1245, 1250 (5th Cir. 1997) (citations omitted); *see Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (U.S. 2007) ("Factual allegations must be enough to raise a right to relief above the speculative level"). Where a plaintiff's complaint fails to support any claims as to the defendants, it is proper to dismiss the defendants from the action. In this matter, the Plaintiffs have failed to meet their burden and have chosen instead to employ the "shotgun" approach to pleading which is disfavored by the judiciary. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). In *Magluta*, the Court described a shotgun complaint as one that ignores the requirement of a "short and plain statement." *Id*. Instead, the shotgun complaint identifies multiple defendants and charges each defendant with the same conduct, "though geographic and temporal realities make plain that all of the defendants could not

have participated in every act complained of." *Id*. The Complaint in this matter does exactly the same thing that the Eleventh Circuit has repeatedly condemned.

In *Sidney Chancellor, et al. v. Air Liquide America Corp., et al*., Case No. CV-04-BE-2554-S (N.D. Ala., Oct. 8, 2004), (unpublished) Judge Karon O. Bowdre *sua sponte* dismissed a similar shotgun complaint, without prejudice, due to the plaintiffs' failure to state a claim upon which relief could be granted and failure to plead with the required particularity. *See* Order of Dismissal, entered on the court record on October 8, 2004 and attached hereto as <u>Exhibit 2</u>. The court stated that the complaint, "[a]t best ... suggests only that plaintiffs have respiratory illnesses, that plaintiffs were exposed to silica during all or part of [their] working lives ... while working at various worksites in Alabama and other states, and that all seventy-five named defendants were in some way participants in the sand blasting industry." *Id*. at 2. Furthermore, "the complaint forces the defendants to guess at what they each may have done to injure the plaintiffs, and when, where and how." *Id*. In holding that dismissal was the correct approach, the court stated, "[t]he court is acutely aware of its duty to dispose of shotgun complaints at the earliest opportunity ... Rather than wait until justice has been obstructed by the inadequacies of this complaint and 'scarce judicial and parajudicial resources' are further wasted, the court *sua sponte* dismisses this case as to all defendants without prejudice and with leave to refile a complaint that complies with all of the requirements of the Federal Rules of Civil Procedure." *Id*. at 2-3.

Chief Judge U. W. Clemon in the Northern District of Alabama ordered the *sua sponte* dismissal of *Skip Palmer, et al, v. Aearo Corp., et al*., Case No. 7.04-CV-3262-UWC (N.D. Ala., May 31, 2005) (unpublished) on similar grounds. *See* Order of

Dismissal, entered on the court record on May 31, 2005 and attached hereto as <u>Exhibit 3</u>.

Chief Judge Clemon noted:

> Neither the Defendants nor the Court can discern from Plaintiff's Complaint a fair idea of what the Plaintiffs are complaining. The Complaint suggests that the Plaintiffs have occupational lung disease, that Plaintiffs were exposed to silica "while working at various work-sites in Alabama," and that all twenty-three (23) Defendants in some way participated in the sand blasting industry. However, it is not clear what Defendants produced which products, and the resulting causes of action related to those products.
>
> The Complaint alleges that different groups of Defendants negligently manufactured equipment, failed to inform of possible danger, *etc.* However, the Complaint does not state when, where, or how the Defendants have injured the Plaintiffs. Furthermore, the Plaintiffs do not explain which causes of action apply to which Defendants. Therefore, the Plaintiffs do not allow the Defendants to adequately defend themselves in response to the Complaint.

*Id.*

In this case, Plaintiffs generically name numerous products allegedly manufactured by seventy-three (73) Defendants, which might have caused, directly or indirectly, harm to themselves or their decedents. Like *Chancellor*, the vague nature of the Complaint forces all of the defendants, including Crane Pumps & Systems, Inc., to guess "what each may have done to injure the plaintiffs, and when, where and how." (*Chancellor*, <u>Exhibit 2</u> at p. 2.) Although the Complaint lists vague descriptions of products produced or distributed by the Defendants, it fails to make clear "the resulting causes of action related to those products." (*Palmer*, <u>Exhibit 3</u> at p.2.) In short, the plaintiffs have failed to give sufficient detail "so that the defendant[s], and the court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some legal basis for recovery." *Id.* Because plaintiffs' Complaint fails to provide a short and plain

statement of plaintiffs' claims, it fails to state a claim upon which relief may be granted and is due to be dismissed.

Moreover, the Complaint alleges five causes of action against the defendants. All causes of action are generically linked to all of the named Defendants. Chief Judge U.W. Clemon of the Northern District of Alabama previously dismissed the case of *Vera Beavers, et al. v. A.O. Smith Electrical Products Company, et al.,* Civil Action No. 2:06-CV-899-UWC (N.D. Ala. May 8, 2006), on several grounds, including the fact that the plaintiffs' Complaint did "not specifically link specific causes of action to a specific Defendant." [1]  See *Order of Dismissal* (N.D. Ala. August 31, 2006) and *Memorandum Opinion on Motions to Dismiss* (N.D. Ala. August 31, 2006) attached hereto collectively as Exhibit 4.

Furthermore, sharp condemnation of the type of "shotgun" pleading exhibited by the plaintiffs herein was recently expressed by the Eleventh Circuit in the opinion of *Melvin Davis, et al. v. Coca-Cola Bottling Co. Consol.*, 2008 WL 314962 (C.A. 11 (Ala.) 2008).  In that case, nine plaintiffs brought employment discrimination claims against Coca-Cola alleging a pattern or practice of discrimination on account of race.  As to the pleadings filed by the parties in that matter, the Eleventh Circuit stated:

> If the framers of the Federal Rules of Civil Procedure could read the record in this case - beginning with the plaintiffs' complaint and CCBCC's answer and continuing to the district court's final order granting CCBCC summary judgment - they would roll over in their graves.  In fashioning the Rules, they assumed that complaints would be drafted as clearly and definitively as possible, so that the defendant could understand the causes(s) of action the plaintiff was asserting and frame a responsive pleading, and the district court, having a clear and definitive response before it, could recognize the parties' claims and defenses, identify the issues of fact to be litigated, and proceed

---

[1] The District Court's dismissal of this action was affirmed by the Eleventh Circuit on February 13, 2008.

to a just result...

…This case confounds these assumptions. The complaint is a model "shotgun" pleading of the sort this court has been roundly, repeatedly, and consistently condemning for years, long before this lawsuit was filed. And the defendants answer is not better…

…This all-encompassing discrimination gave the eight named plaintiffs (and the unnamed members of their class) untold causes of action, all bunched together in one count contrary to the requirements of Federal Rules of Civil Procedure 10(b)……..

…No competent lawyer - whether skilled in Title VII litigation or not - could compose an answer to these sweeping and multifaceted acts of discrimination that would be in keeping with what the framers of the Rules envisioned in fashioning Rule 8(b)…

…Faced with these pleadings, how the district court could have made heads or tails out plaintiff's allegations, and which affirmative defenses applied to which causes of action is beyond us…

…The unacceptable consequences of shotgun pleadings are many. First, and perhaps foremost, shotgun pleading inexorably broadens the scope of discovery, much of which may be unnecessary...

…Second, in addition to delaying a just disposition of the case at the undue expense of one or both of the parties, shotgun pleadings, if tolerated by the court, lessen the time and resources the court has available to reach and dispose of the cases and litigants waiting to be heard…

…Third, shotgun pleadings wreak havoc on appellate court dockets. The case at hand is Exhibit A. Due to the nebulous pleadings in this case and the district court's failure to strip the case down and identify each claim and defense, we had to undertake that task from scratch…

…Fourth, the mischief shotgun pleadings causes undermines the public's respect for the courts- the ability of the courts to process efficiently, economically, and fairly the business placed before them…

…What happened in this case was easily avoidable- by a straightforward application of the Rules of Civil Procedure. First,

> defense counsel, faced with a complaint purporting to combine in one count multiple claims of eight plaintiffs, should have moved the court for a more definite statement pursuant to Federal Rule of Civil Procedure Rule 12(e)…

(*Davis*, pp. 19-21. Opinion attached hereto as <u>Exhibit 5</u>.)

### III.  <u>THE CLAIMS OF PLAINTIFFS EMMA JEAN BARTON AND JOHN MARONA ARE DUE TO BE DISMISSED FOR FAILURE TO COMPLY WITH ALABAMA'S STATUTE OF LIMITATIONS.</u>

Prior to May 19, 1980, Alabama had a one-year statute of limitations for personal injury actions not resulting in death. Ala. Code § 6-2-39 (repealed 1980). Under the law as it existed prior to May 19, 1980, the cause of action accrued and the statute of limitations began to run from the date the injured person was last exposed to the danger, whether or not the full amount of damages or injuries was apparent. *Garrett v. Raytheon Co.,* 368 So. 2d 516, 520 (Ala. 1979); *Cazalas v. Johns-Manville Sales Corp.*, 435 So. 2d 55, 57 (Ala. 1983).

Effective May 19, 1980, the Alabama legislature repealed § 6-2-39 and prospectively enacted a new discovery rule which provides that a personal injury action resulting from asbestos exposure accrues on the date the injured person, through reasonable diligence, should have reason to discover the alleged injury. Ala. Code § 6-2-30(b).

However, the Alabama Supreme Court held in *Tyson v. Johns-Manville Sales Corp.*, 399 So. 2d 263 (Ala. 1981), that the "discovery rule" statute of limitations that was enacted in 1980 does not apply retroactively. Therefore, a personal injury plaintiff who last was exposed to asbestos prior to May 19, 1979 must bring suit within one year of the date of last exposure. *See Johnson v. Garlock, Inc.*, 682 So. 2d 25, 53-28 (Ala.

1996).

In the present action, plaintiff John Marona claims that he diagnosed with lung cancer on or about September 19, 2007. (Complaint, ¶ 5.)  However, Marona claims that his last exposure occurred in 1967.  (Id.)  Because Marona's last date of alleged exposure was prior to May 19, 1979, the "discovery rule" of Ala. Code § 6-2-30(b) does not apply. Marona's claims therefore fail to comply with Alabama's statute of limitations and are due to be dismissed as a matter of law.

The claims of plaintiff Emma Jean Barton are likewise due to be dismissed for failure to comply with Alabama's statute of limitations.  Claims for personal injury in Alabama are subject to a two statute of limitations: "*(l)* All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."  Ala.Code 1975 § 6-2-38.  Barton alleges that she was diagnosed on or about June 14, 2004 (Complaint ¶2), more than two years before she filed this suit on March 3, 2008.

Accordingly, the claims of John Marona and Emma Jean Barton are due to be dismissed for failure to comply with Alabama's statute of limitations.


**IV.    PLAINTIFFS ARE NOT PROPERLY JOINED UNDER RULE 20 OF THE FEDERAL RULES OF CIVIL PROCEUDRE AND THEIR CLAIMS ARE DUE TO BE SEVERED.**

Rule 20 of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a]ll persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact

common to all these persons will arise in the action." Here, plaintiffs allege generally that they or their decedents have been exposed to asbestos and asbestos-containing products. However, plaintiffs fail to allege facts indicating that their right to relief arises out of the same transaction[s] or occurrences[s]. The plaintiffs worked at different job sites, at different times, for different employers and in different occupations. There are absolutely no allegations by the plaintiffs that their claims arise out of the same job sites, for the same time periods, and/or while working for the same employers. This is clearly illustrated by the simple fact that Othre E. Burnett (Decedent of plaintiff, Dorothy F. Burnett) and living plaintiff, Emma Jean Barton, are both alleged to have worked exclusively in Michigan, while no other plaintiff claims an exposure in Michigan (Complaint, ¶¶ 1-2.) As a result of the plaintiffs' improper joinder, the Defendants, and this Court, are left to presume that a common set of facts, or question of law, forms the basis of their claims. Crane Pumps & Systems, Inc. submits that Rule 20 of the Federal Rules of Civil Procedure requires more than mere presumptions for two or more plaintiffs to join in an action for relief. As such, Crane Pumps & Systems, Inc. seeks severance of each of the plaintiffs' claims as set forth in the Complaint.

Moreover, the lack of common relief likewise warrants severance of the plaintiffs' claims. The Complaint filed by plaintiffs is a mix of wrongful death and personal injury claims by living plaintiffs (Ema Jean Barton, Joel Gray, Donna Hayes, John Marona, Roy Rembert, Jr. and Alan Vincent) and by representatives on behalf of deceased individuals (Dorothy F. Burnett on behalf of Othre E. Burnett, Ruth McKinley on behalf of Rayford Allen McKinley and Norma Mashburn on behalf of Russell Mashburn). It is well settled that wrongful death plaintiffs in Alabama are only entitled to punitive damages and not to

compensatory damages available to personal injury plaintiffs. *Cherokee Elec. Coop. v. Cochran*, 706 So.2d 1188, 11193 (Ala. 1997). If nothing else, the wrongful death claims should be severed from the personal injury claims.

### V.     ALTERNATIVELY, PLAINTIFFS SHOULD BE REQUIRED TO PROVIDE A MORE DEFINITE STATEMENT OF THEIR CLAIMS IN ACCORDANCE WITH RULE 12(e) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

Federal Rule of Civil Procedure 12(e) provides that "[if] a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, he may move for a more definite statement before interposing a responsive pleading." The law requires specificity such that a defendant is aware of the claims brought against it and is able to file responsive pleadings in good faith. If a petition is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed, the defendant may file a motion for more definite statement. *See Sisk v. Texas Park and Wildlife Dept.,* 644 F.2d 1056, 1059 (5th Cir. 1981). Moreover, the 11th Circuit has repeatedly held that when faced with a shotgun complaint such this, where a complaint begins with a long list of general allegations, many of which are not relevant to each claim, and then each count incorporates by reference every antecedent allegation, the defendants should move for a more definite statement. *See e.g. Davis v. Coca-Cola Bottling Co. Consol.*, 2008 WL 314962, 12-15 (C.A.11 (Ala. (C.A.11 (Ala.),2008); *Byrne v. Nezhat* 261 F.3d 1075, 1129-32 (C.A.11 (Ga.),2001); *Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1333 (C.A.11 (Fla.),1998).

As discussed above, the plaintiffs' Complaint fails to put Crane Pumps & Systems, Inc. on notice as to the transactions or occurrences that form the basis of their

claims. Plaintiffs fail to aver any specific dates, worksites, or other facts surrounding their alleged use of a Crane Pumps & Systems, Inc. product or how the use of such a product contributed to their alleged injuries. Crane Pumps & Systems, Inc. cannot properly respond to such bare allegations. Furthermore, this Complaint, which states a long list of general allegations and then incorporates each antecedent allegation in to each count, without matching counts to particular plaintiffs or defendants, is exactly the sort of complaint that the 11th Circuit has directed defendants to respond to with a motion for more definite statement. Accordingly, Crane Pumps & Systems, Inc. alternatively moves this Court for an Order requiring Plaintiffs to provide a more definite statement of their claims pursuant to Federal Rule of Civil Procedure 12(e).

## **CONCLUSION**

For the foregoing reasons, this Honorable Court lack subject matter jurisdiction over this matter. Further, the Plaintiffs have not alleged the basic facts necessary or sufficient under Rule 12(b)(6) to state a claim for which relief can be granted as to Crane Pumps & Systems, Inc., in violation of Rule 8 of the Federal Rules of Civil Procedure. Accordingly, Crane Pumps & Systems, Inc.'s Rule 12(b)(6) motion should be granted, dismissing all of the Plaintiffs' claims against Crane Pumps & Systems, Inc., with prejudice and at Plaintiffs' cost. Even if this Court should not dismiss all claims of the Plaintiffs, then the claims of John Marona and Emma Jean Barton are due to be dismissed for failure to comply with Alabama's statute of limitations. Further, Plaintiffs have attempted to join their claims in violation of Federal Rule of Civil Procedure 20 without any justifiable assertion that their claims arise out of the same series of transactions or occurrences and despite the fact that common relief can not be had among the plaintiffs.

As such, Plaintiffs' claims are due to be severed. Alternatively, should this Honorable Court deny Crane Pumps & Systems, Inc.'s Motion to Dismiss, Crane Pumps & Systems, Inc. respectfully submits that its Rule 12(e) motion for more definite statement should be granted and the Plaintiffs should be ordered to amend their Complaint so that it avoids the "shotgun style" and so that it provides sufficient particulars, including: (i) plaintiffs and plaintiffs' decedent's employers, periods of employment and job descriptions; (ii) the approximate time and locations where plaintiffs and plaintiffs' decedents were allegedly exposed to asbestos-containing products allegedly manufactured by Crane Pumps & Systems, Inc.; (iii) the particular brand of products to which plaintiffs or plaintiffs' decedents were allegedly exposed; (iv) the specific defendants' products to which the plaintiffs and plaintiffs' decedents were allegedly exposed; (v) the linking of a particular defendant or defendants to a particular cause of action; (vi) the Plaintiffs' basis, if any, for linking Crane Pumps & Systems, Inc. to plaintiffs' and plaintiffs' decedent's alleged asbestos exposure.

WHEREFORE, for the reasons stated herein, defendant, Crane Pumps & Systems, Inc., respectfully moves this Court to dismiss this case in its entirety or to grant such other and further relief sought in its Motion that this Court deems proper.

Respectfully submitted this 11th day of April, 2008.

/s/  F. Grey Redditt, Jr._____
F. GREY REDDITT, JR. (ASB-5142-R64F)
TIMOTHY A. CLARKE (ASB-1440-R67T)
***Attorneys for Crane Pumps & Systems, Inc.***

OF COUNSEL**:**

VICKERS, RIIS, MURRAY and CURRAN, L.L.C.
P. O. Drawer 2568
Mobile, AL 36652-2568
Telephone:     (251) 432-9772
Facsimile:     (251) 432-9781
Email: gredditt@vickersriis.com
        tclarke@vickersriis.com


## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on April 11, 2008, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court electronic filing system

                    /s/  F. Grey Redditt, Jr._____
                    F. GREY REDDITT, JR. (ASB-5142-R64F)

# Exhibit 1

Westlaw.

Slip Copy                                                                                    Page 1
Slip Copy, 2008 WL 383051 (C.A.11 (Ala.))
(Cite as: Slip Copy)

**C**Beavers v. A.O. Smith Elec. Products Co.
C.A.11 (Ala.),2008.
Only the Westlaw citation is currently available.This case was not selected for publication in the Federal Reporter.Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Eleventh Circuit Rules 36-2, 36-3. (Find CTA11 Rule 36-2 and Find CTA11 Rule 36-3)

United States Court of Appeals,Eleventh Circuit.
Vera L. BEAVERS, personal representative for The Estate of Charles A. Abernathy, deceased, Douglas Akins, Cleburn E. Aderholt, Clarice W. Anderson, spouse and personal representative for the Estate of Henry L. Anderson, deceased, Donald F. Armstrong, Ernest W. Austin, Jerry Wayne Barfield, Robert H. Barker, Ruth L. Allen, daughter and personal representative for Jerry Allen Barronton, deceased, Shirley Darlene Barrow, personal representative for the Estate of Carl A. Barrow, deceased, Ethal Bates, spouse and personal representative for the Estate of John H. Bates, Jr., deceased, Debra Baylis, spouse and personal representative for the Estate of John Baylis, deceased, Robert L. Beckwith, John W. Blackerby, personal representative for the Estate of Ernest Leon Blackerby, deceased, Patrick Borden, personal representative for the Estate of David C. Borden, deceased, Sidney R. Boutwell, Sr., spouse and personal representative for the Estate of Bonnie Boutwell, deceased, James E. Bowling, Irene Brown, spouse and personal representative for the Estate of James Edward Brown, deceased, Evelyn Brown, personal representative for the Estate of Richard Allen Brown, deceased, James P. Burnett, James J. Byrd, Gayle Byrom, spouse and personal representative for the Estate of Jerry L. Byrom, deceased, Carolyn Sue Chapman, personal representative for the Estate of Allen M. Chapman, deceased, Cathy Sherk, personal representative for the Estate of Lester Knox Coleman, deceased, James Caton, Georgie L. Corsbie, Leon H. Cosby, Vernon C. Creasy, James E. Danley, Louise S. Davis, personal representative for the Estate of Bobby R. Davis, deceased, Marshall Dease, Lloyd H. Devaughn, Rebecca Ann Elliott, spouse and personal representative for the Estate of James Weldon Elliott, deceased, Charles E. Emmons, Joann Evans, personal representative for the Estate of Robert Evans, deceased, Lucille W. Evers, William Farshee, Mattie L. Feagin, personal representative for the Estate of Ray Feagin, deceased, Flora Mae Feagins, personal representative for the Estate of Roosevelt Feagins, deceased, Marvin D. Ghrigsby, A.C. Goss, Debra J. Griffin, personal representative for the Estate of William R. Griffin, deceased, Phillip Hallmark, personal representative for the Estate of Chester Hallmark, deceased, Marlyn Harris, spouse and personal representative for the Estate of Frank Harris, deceased, Melba Mallory, personal representative for the Estate of Rena Houston, deceased, Patricia Howell, spouse and personal representative for the Estate of Ray Nance Howell, Jr., deceased, Faythe Hughes, spouse and personal representative for the Estate of Thomas D. Hughes, deceased, Verdie May James, spouse and personal representative for the Estate of Clarence O. James, deceased, Evette Jimmerson, daughter and personal representative for the Estate of Lee R. Jimmerson, deceased, Joyce Ann Johnson, spouse and personal representative for the Estate of Ansel Lee Johnson, deceased, David H. Johnson, Billy F. Jones, Casey T. Jones, Thelma Jane Krueger, spouse and personal representative for the Estate of Robert S. Krueger, deceased, David Lane, Bobby Law, personal representative for the Estate of Chester Law, deceased, Glennes B. Lemley, James Lewis Malone, Wanda Mangum, spouse and personal representative for the Estate of Barney Mayo Mangum, deceased, Bobby Joe McDowell, Bill Moore, William C. Morgan, Mary Morrison, spouse and personal representative for the Estate of James D. Morrison, Ellis Moricle, Carolyn Sue Mote, spouse and personal representative for the Estate of Morris R. Mote, Joe Norman, Tony Curtis Hunter, personal representative for the Estate of Percy L. Norwood, deceased, James Ogle, Sandra Owens, daughter and personal representative for the Estate of Raymond Owens, deceased, James Robert Palmer, Eddie Pitts, Nelda D. Lecroy, daughter and personal representative for the Estate of Harold Poland, deceased, Geraldine Ratliff, spouse and personal representative for the Estate of Max Ratliff, deceased, Herman Rea, Leopoldo Rendon, Arnold L. Richey, Norma Robinson, spouse and personal representative for the Estate of Edward H. Robinson, deceased, Azalean Rogers, spouse and personal representative

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 383051 (C.A.11 (Ala.))
(Cite as: Slip Copy)

for the Estate of Thomas L. Rogers, deceased, Dennis Rye, Eula Scorver, spouse and personal representative for the Estate of Henry Scorver, deceased, Billy O. Seal, Beverly Shelby, daughter and personal representative for the Estate of Eula D. Shelby, deceased, Joe R. Smith, Peggy Walker, daughter and personal representative for the Estate of James R. Steelman, deceased, Charles D. Stevens, Marvin Stringer, Mamie M. Stone, spouse and personal representative for the Estate of Fred Stone, deceased, Woodrow Wilson Thomas, Fay D. Thrasher, Donna Sweet, spouse and personal representative for the Estate of Phillip Austin Sweet, deceased, Charlette Turner, spouse and personal representative for the Estate of James E. Turner, deceased, Jack W. Tyrbyfill, Susie Webb, spouse and personal representative for the Estate of Gean Charles Webb, deceased, Elva Willmmarth, spouse and personal representative for the Estate of Oliver Howard Willmarth, deceased, Lynn W. Wilson, Barbara Collins, Executrix for the Estate of Larry B. Wolfe, Micheal E. Wood, Alan Woods, Plaintiffs-Appellants,

v.

A.O. SMITH ELECTRICAL PRODUCTS COMPANY, a division of A.O. Smith Corporation, A.O. Smith Corporation, A.W. Chesterton Company, Albany International, American Optical Corporation, Crown Cork & Seal Company, Inc. Crown Holdings, Inc., Kelly-Moore Paint Company, Borg Warner Corp. by and through its successor in interest, BOrgwarner Morse Tec Inc., Exteco, Inc. f/k/a Thermo Electric Co., Inc., Marley-Wylain Co. d/b/a Weil-Mclain Co., Inc., Honeywell Inc., John Crane Inc. et.al., Defendants-Appellees.
Nos. 06-15401, 07-11401
Non-Argument Calendar.

Feb. 13, 2008.

**Background:** Plaintiffs brought personal injury and wrongful death action against defendants resulting from exposure to asbestos. The United States District Court for the Northern District of Alabama, Docket No. 06-00899-CV-UWC-2-S, dismissed. Thereafter, the court struck plaintiffs' motion for relief from judgment and denied a motion for reconsideration. The district subsequently granted the plaintiffs' motion to reopen the case and to file a proposed amended complaint. Plaintiffs appealed the court's order denying their motion for relief from judgment.

**Holdings:** The Court of Appeals held that:
(1) plaintiffs failed to establish diversity jurisdiction, and
(2) plaintiffs were not entitled to relief from judgment.

Affirmed.

[1] **Federal Courts** 170B ⬅0

170B Federal Courts
Plaintiffs failed to establish diversity jurisdiction, where complaint alleged only the residence of the nearly 100 plaintiffs, not their states of citizenship, and did not allege that the claims of each individual plaintiff, which arose out of separate exposures to asbestos at different locations over different time periods, exceeded the sum of $75,000. 28 U.S.C.A. § 1332(a).

[2] **Federal Civil Procedure** 170A ⬅0

170A Federal Civil Procedure
Plaintiffs' mistake in drafting personal injury and wrongful death complaint against defendants arising out of exposure to asbestos, to give the impression that complete diversity did not exist even though it really did, did not warrant relief from dismissal of their complaint for lack of diversity jurisdiction, where mistaken drafting was not the only problem with jurisdiction. Fed.Rules Civ.Proc.Rule 60(b)(1), 28 U.S.C.App.(2000 Ed.)

[3] **Federal Civil Procedure** 170A ⬅0

170A Federal Civil Procedure
District court's sua sponte dismissal of plaintiffs personal injury and wrongful death complaint against defendants resulting from exposure to asbestos was not an unfair surprise, so as to warrant relief from judgment; plaintiffs drafted the complaint and were responsible for alleging the proper jurisdictional facts, and district court had duty to inquire into whether it had diversity jurisdiction. Fed.Rules Civ.Proc.Rule 12(h)(3), 28 U.S.C.App. (2000).; Fed.Rules Civ.Proc.Rule 60(b)(1), 28 U.S.C.App.(2000 Ed.)

[4] **Federal Civil Procedure** 170A ⬅0

Slip Copy
Slip Copy, 2008 WL 383051 (C.A.11 (Ala.))
(Cite as: Slip Copy)

Page 3

170A Federal Civil Procedure
District court's sua sponte dismissal of plaintiffs personal injury and wrongful death complaint against defendants resulting from exposure to asbestos for lack of diversity jurisdiction did not impose an extreme and unexpected hardship, so as to warrant granting plaintiffs relief from judgment; it was not unexpected that district court would dismiss a complaint for lack of jurisdiction when the only possible jurisdictional basis was diversity and the complaint on its face failed to allege not only the citizenship of each plaintiff but also the amount in controversy requirement. Fed.Rules Civ.Proc.Rule 60(b)(6), 28 U.S.C.App.(2000 Ed.)

G. Patterson Keahey, Jr., Law Office G. Patterson Kehey, P.C., John David Saxon, John D. Saxon, P.C., Birmingham, AL, for Plaintiffs-Appellants.
James L. Pattillo, Matthew Whittle Robinett, Norman, Wood, Kendrick & Turner, Keith James Pflaum, William Perry Webb, William T. Mills, II, Porterfield, Harper, Mills & Motlow, P.A., Robert R. Baugh, Sirote & Permutt, P.C., Frank E. Lankford, Jr., Huie, Fernambucq & Stewart, LLP, Allan R. Wheeler, Charles Paul Cavender, Burr & Forman, Timothy W. Knight, Lucy Westover Jordan, Kee & Selby, LLP, George Matthew Keenan, Anthony C. Harlow, Starnes & Atchison, LLP, Jenelle R. Evans, S. Allen Baker, Jr., Balch & Bingham, LLP, Nicole Mapp Hardee, Harris & Harris, LLP, Birmingham, AL, Laura Devaughn Goodson, Forman Perry Watkins Krutz & Tardy LLP, Jackson, MS, Edward B. McDonough, Jr., Walter Thompson Gilmer, Jr., McDowell, Knight, Roedder & Sledge, LLC, Frank Grey Redditt, Jr., Vickers, Riis, Murray & Curran, L.L.C., Gary W. Fillingim, Burns, Cunningham & Mackey PC, Mobile, AL, Nathan M. Thompson, Elizabeth B. Padgett, Stephen Christopher Collier, Hawkins & Parnelll, LLP, Atlanta, GA, Kacey Leigh Keeton, Brunini, Grantham, Grower and Hewes, PLLC, Donald C. Partridge, Clifton Wayne Jefferis, Forman, Perry, Watkins, Krutz & Tardy, Jackson, MS, Chadwick L. Shook, Aultman, Tyner & Ruffin, Ltd., Hattiesburg, MS, for Defendants-Appellees.

Appeals from the United States District Court for the Northern District of Alabama. D.C. Docket No. 06-00899-CV-UWC-2-S.

Before TJOFLAT, BLACK and CARNES, Circuit Judges.

PER CURIAM:
*1 In this case, which is not a class action, the plaintiffs, nearly 100 individuals, appeal the district court's dismissal of their complaint for lack of subject matter jurisdiction, as well as the court's denial of their subsequent Rule 60(b) motion for relief from judgment. The complaint, which sought damages for personal injury and wrongful death resulting from exposure to asbestos, alleged that the court had diversity jurisdiction under 28 U.S.C. § 1332. However, the district court determined that it lacked subject matter jurisdiction because there was not complete diversity among the parties-specifically, the complaint contained plaintiffs and defendants that were both alleged to be from California and Georgia. Accordingly, on August 31, 2006, the court dismissed the complaint "[f]or want of diversity jurisdiction."

On October 2, 2006, the plaintiffs filed a notice of appeal, challenging the district court's dismissal of their complaint. On that same day, the plaintiffs filed a Rule 60(b) motion for relief from judgment, arguing that the court's impression that there was not complete diversity was the result of mistake under Rule 60(b)(1), they were unfairly surprised by the district court's order under Rule 60(b)(1), and the order was manifestly unjust under Rule 60(b)(6). The plaintiffs also moved to sever each plaintiff's claim and to amend their complaint. On October 25, 2006, the district court struck the plaintiffs' Rule 60(b) motion for relief from judgment because it believed that the pending appeal stripped it of jurisdiction over the motion.

On the next day, the plaintiffs filed a motion for reconsideration, arguing that the district court did have jurisdiction to entertain its earlier Rule 60(b) motion, and that the court should therefore grant them relief from its October 25, 2006, order and consider the merits of their Rule 60(b) motion. The district court held a hearing on the plaintiffs' motion on January 9, 2007, and the next day, January 10, denied their Rule 60(b) motion because it "raised no meritorious arguments entitling relief under Rule 60(b)." The court also re-emphasized that on the face of the complaint the court lacked diversity jurisdiction. Finally, the court stated that the plaintiffs could either file a new action or move to reopen the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 383051 (C.A.11 (Ala.))
(Cite as: Slip Copy)

current case with an attached proposed amended complaint that satisfied the court's jurisdictional requirements.

On January 19, 2007, the plaintiffs filed a motion to reopen the case and to file their proposed amended complaint, which was attached to the motion. The district court denied that motion on February 28, 2007, for want of jurisdiction because the case was still pending on appeal in this Court. On March 12, 2007, the plaintiffs filed with the district court a motion for an extension of time to appeal the court's January 10, 2007, order denying their Rule 60(b) motion, arguing that they had good cause for their failure to file, because they had believed that the court's order was an invitation to move to re-open the case and was therefore not a final, appealable order. The district court granted the plaintiffs' motion, and the plaintiffs appealed the district court's order denying their Rule 60(b) motion.

*2 The plaintiffs' appeals of the district court's order dismissing their complaint and the court's order denying them Rule 60(b) relief were consolidated. In this consolidated appeal, the plaintiffs first contend that the district court erred by dismissing their complaint for lack of diversity jurisdiction because, according to the plaintiffs, the proper method to cure problems with diversity is to dismiss a dispensable nondiverse party or to allow severance of the claims.[FN1] The plaintiffs further contend that the district court erred by denying their Rule 60(b) motion for relief from judgment because: (1) the lack of diversity jurisdiction on the face of the complaint was the result of mistake; (2) the court unfairly surprised them by sua sponte dismissing their complaint for lack of jurisdiction; and (3) the court's dismissal of their complaint was manifestly unjust.

**I.**

The plaintiffs contend that the district court erred by dismissing their complaint for lack of subject matter jurisdiction because, although they admit that their complaint on its face gave the mistaken impression that complete diversity did not exist, they argue that the proper method to cure problems with diversity is to dismiss a dispensable nondiverse party or to allow severance of the plaintiffs' claims. The defendants respond that the district court properly dismissed the plaintiffs' complaint because, in addition to the

problems with complete diversity found by the district court and admitted by the plaintiffs, the plaintiffs alleged only the residency, not the citizenship, of the nearly 100 plaintiffs. Moreover, according to the defendants, the plaintiffs also failed to allege that each plaintiff's claims met the amount in controversy requirement.

We review *de novo* the district court's conclusion that it lacked subject matter jurisdiction. *Dale v. Moore,* 121 F.3d 624, 626 (11th Cir.1997); *see also Williams v. Best Buy Co.,* 269 F.3d 1316, 1318 (11th Cir.2001) ("Subject matter jurisdiction is a question of law subject to de novo review.")."[W]e may affirm the district court's judgment 'on any ground that finds support in the record.'"*Gaston v. Bellingrath Gardens & Home, Inc.,* 167 F.3d 1361, 1363 n. 1 (11th Cir.1999) (quoting *Jaffke v. Dunham,* 352 U.S. 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314 (1957)).

In *Morrison v. Allstate Indemnity Co.,* 228 F.3d 1255 (11th Cir.2000), a case premised on diversity jurisdiction, we said:
> Federal courts have limited subject matter jurisdiction, or in other words, they have the power to decide only certain types of cases. While Article III of the Constitution sets the outer boundaries of that power, it also vests Congress with the discretion to determine whether, and to what extent, that power may be exercised by lower federal courts. Consequently, lower federal courts are empowered to hear only cases for which there has been a congressional grant of jurisdiction, and once a court determines that there has been no grant that covers a particular case, the court's sole remaining act is to dismiss the case for lack of jurisdiction.

*3*Id.* at 1260-61 (citations omitted)."A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises."*Johansen v. Combustion Eng'g, Inc.,* 170 F.3d 1320, 1328 n. 4 (11th Cir.1999)."If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."*Fed.R.Civ.P. 12(h)(3); see also Morrison,* 228 F.3d at 1261.

The plaintiffs allege in their complaint that jurisdiction in the district court over their state-law

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 5
Slip Copy, 2008 WL 383051 (C.A.11 (Ala.))
(Cite as: Slip Copy)

tort claims is proper based on diversity of citizenship, pursuant to 28 U.S.C. § 1332. The plaintiffs, as the party asserting diversity jurisdiction, have the burden to "affirmatively allege facts demonstrating the existence of jurisdiction."*Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir.1994).

"Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds the statutorily prescribed amount, in this case $75,000."*Williams*, 269 F.3d at 1319 (citing 28 U.S.C. § 1332(a)). Diversity jurisdiction "requires complete diversity-every plaintiff must be diverse from every defendant."*Palmer v. Hosp. Auth.*, 22 F.3d 1559,1564 (11th Cir.1994)."Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person."*Taylor*, 30 F.3d at 1367. Moreover, where multiple plaintiffs allege claims in the same complaint, the complaint must allege that the claims of each individual plaintiff meet the amount in controversy requirement. *See Smith v. GTE Corp.*, 236 F.3d 1293, 1300 n. 6 (11th Cir.2001) ("Generally, when plaintiffs join in one lawsuit, the value of their claims may not be added together, or 'aggregated,' to satisfy the amount in controversy requirement for diversity jurisdiction."); *see also Troy Bank v. G.A. Whitehead & Co.*, 222 U.S. 39, 40-41, 32 S.Ct. 9, 9, 56 L.Ed. 81 (1911) ("When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount....").

[1] The plaintiffs' complaint alleges only the residence of the nearly 100 plaintiffs, not their states of citizenship. Because the plaintiffs have the burden to "affirmatively allege facts demonstrating the existence of jurisdiction,"*Taylor*, 30 F.3d at 1367, and failed to allege the citizenship of the individual plaintiffs, the district court lacked subject matter jurisdiction on the face of the complaint. *See id.*Moreover, the plaintiffs' complaint does not allege that the claims of each individual plaintiff exceeded the $75,000 threshold, but instead states generally that "[t]he matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00."The plaintiffs' claims arise out of their separate exposures to asbestos at different locations over different time periods, and therefore the plaintiffs were required to

allege that each individual plaintiff's claims met the amount in controversy requirement. *See Smith*, 236 F.3d at 1300 n. 6;*see also Troy Bank*, 222 U.S. at 40-41, 32 S.Ct. at 9. Because they failed to do so, the district court also lacked subject matter jurisdiction on this basis.

*4 Neither of these defects in the plaintiffs' complaint could be remedied by the plaintiffs' suggested approach of dismissing nondiverse dispensable parties, and therefore "the court's sole remaining act [was] to dismiss the case for lack of jurisdiction."*Morrison*, 228 F.3d at 1261. Even though the district court did not address the amount in controversy requirement or the fact that the plaintiffs alleged residence instead of citizenship, we nonetheless affirm the district court's dismissal of the plaintiffs' complaint for lack of subject matter jurisdiction on these grounds. *See Gaston*, 167 F.3d at 1363 n. 1.

II.

The plaintiffs also contend that the district court erred by denying their Rule 60(b) motion for relief from judgment because: (1) the lack of diversity jurisdiction on the face of the complaint was the result of mistake; (2) the court unfairly surprised the plaintiffs by sua sponte dismissing their complaint for lack of jurisdiction; and (2) the court's dismissal of their complaint was manifestly unjust. We review the district court's denial of the plaintiffs' Rule 60(b) motion only for abuse of discretion. *Am. Bankers Ins. Co. of Fla. v. Nw. Nat'l Ins. Co.*, 198 F.3d 1332, 1338 (11th Cir.1999).

Federal Rule of Civil Procedure 60(b) allows for relief from a final judgment, order, or proceeding for several reasons, including "mistake, inadvertence, surprise, or excusable neglect;" or "any other reason justifying relief from the operation of the judgment."Fed.R.Civ.P. 60(b)(1), (6). In order to obtain relief under Rule 60(b), a party " 'must prove some justification for relief.'He 'cannot prevail simply because the district court properly could have vacated its order. Instead, appellant must demonstrate a justification so compelling that the court was required to vacate its order.'"*Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1115 (11th Cir.1993) (citations omitted).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 6
Slip Copy, 2008 WL 383051 (C.A.11 (Ala.))
(Cite as: Slip Copy)

[2] The plaintiffs first argue that the district court abused its discretion by denying them relief under Rule 60(b)(1) because, according to them, their complaint was mistakenly drafted to give the impression that complete diversity did not exist even though it really did. In other words, the plaintiffs argue that Rule 60(b) should provide them relief because of their own error in drafting the document. However, even if a party's own mistake in drafting its complaint were a basis for relief under Rule 60(b)(1), which we seriously doubt, the district court did not abuse its discretion in denying relief on this ground because, as we mentioned above, this "mistaken drafting" was not the only problem with jurisdiction in this case. Even apart from the plaintiffs' asserted drafting mistakes, the court lacked jurisdiction over the case.

[3] The plaintiffs next argue that the district court abused its discretion by denying them relief under Rule 60(b)(1) because the district court's sua sponte dismissal of their complaint was an unfair surprise. This argument is meritless. As we mentioned above, federal courts are courts of limited jurisdiction and have the duty to inquire into whether they have subject-matter jurisdiction. See Johansen, 170 F.3d at 1328 n. 4;Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir.1997) ("The Court sua sponte may raise a jurisdiction defect at any time."). And when a court discovers that it lacks jurisdiction, "the court must dismiss the action."Fed.R.Civ.P. 12(h)(3); see also Morrison, 228 F.3d at 1261. The plaintiffs drafted the complaint and were responsible for alleging the proper jurisdictional facts. We will not characterize the district court's correct application of settled law as an unfair surprise.

*5[4] Finally, the plaintiffs argue that the district court abused its discretion by denying them relief under Rule 60(b)(6) because the district court's sua sponte dismissal of their complaint worked a manifest injustice against them. Specifically, they argue that the district court's dismissal of their complaint without prejudice was in effect a "death penalty sanction" because some plaintiffs may be time-barred from refiling their claims. According to the plaintiffs, it was manifestly unjust for the court to resort to this heavy sanction without notice, hearing, or an opportunity to amend to cure any jurisdictional defects.

"[R]elief under [Rule 60(b)(6) ] is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances. The party seeking relief has the burden of showing that absent such relief, an 'extreme' and 'unexpected' hardship will result."Griffin v. Swim-Tech Corp. 722, F.2d 677, 680 (11th Cir.1984) (citations omitted). The plaintiffs have failed to meet this heavy burden. It is not-or should not be, given our precedent in the area of subject matter jurisdiction-"unexpected" that a district court will dismiss a plaintiff's complaint for lack of jurisdiction when the only possible jurisdictional basis is diversity, and the complaint on its face fails to allege not only the citizenship of each plaintiff, see Taylor, 30 F.3d at 1367, but also that the amount in controversy requirement is met for each plaintiff's claims, see Smith, 236 F.3d at 1300 n. 6;see also Troy Bank, 222 U.S. at 40-41, 32 S.Ct. at 9. The district court properly denied the plaintiffs' Rule 60(b) motion for relief.

**AFFIRMED.**

FN1. The plaintiffs also contend that the district court erred by sua sponte dismissing their complaint because the district court's order of dismissal mentioned some of the arguments raised by the defendants in their various motions to dismiss without first allowing the plaintiffs a chance to respond. However, because the district court ultimately dismissed the complaint for lack of jurisdiction, and our review of subject matter jurisdiction is de novo, see Dale v. Moore, 121 F.3d 624, 626 (11th Cir.1997), we need not address this argument.

C.A.11 (Ala.),2008.
Beavers v. A.O. Smith Elec. Products Co.
Slip Copy, 2008 WL 383051 (C.A.11 (Ala.))

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

04 OCT -8 PM 2: 37

... OF ALABAMA

SIDNEY S. CHANCELLOR,

    Plaintiff,

and

JOHN L. PARKER,

    Plaintiff,

vs.

AIR LIQUIDE AMERICA CORP.,
et al.,

    Defendants.

Case No. CV-04-BE-2554-S

ENTERED
OCT -8 2004

ORDER DISMISSING THE CASE

Based on the gross inadequacies of the plaintiffs' complaint, the court *sua sponte* dismisses

this case without prejudice and with leave to refile a complaint that complies with all the

requirements of the Federal Rules of Civil Procedure within 20 days of the date of this order.

"Although the liberal federal rules require only notice pleading, they still require a short and

plain statement of the claim showing that the pleader is entitled to relief.... 'The pleadings still must

state a 'cause of action' in the sense that it must show 'that the pleader is entitled to relief'; it is not

enough to indicate merely that the plaintiff has a grievance, but sufficient detail must be given so that

the defendant, and the court, can obtain a fair idea of what the plaintiff is complaining, and can see

that there is some legal basis for recovery.'" *Hoskman v. Esso Standard Oil Co.*, 263 F.2d 499, 501

(5th Cir. 1959) (quoting Fed. R. Civ. P. 8(a); James Wm. Moore et al., Moore's Federal Practice

1653 (2d ed.)). Neither the defendants nor the court can discern from the plaintiffs' complaint a fair

idea of what the plaintiffs are complaining. At best, the complaint suggests only that plaintiffs have

respiratory illnesses, that plaintiffs were exposed to silica "during all or part of [their] working

lives...while working at various worksites in Alabama or other states," and that all seventy-five

named defendants were in some way participants in the sand blasting industry.

Although the complaint alleges generally that different groups of defendants negligently

manufactured equipment, failed to warn, etc., the complaint forces the defendants to guess what they

each may have done to injure the plaintiffs, and when, where, and how. All seventy-five defendants

must therefore answer with abandon, pleading every conceivable affirmative defense, while

simultaneously risking the possibility that they may inadvertently fail to plead the one good defense

relevant to whatever as-yet-unknown specific claims against them discovery may reveal.

Not only does the complaint fail to place the defendants on notice of the nature of the claims

against them, it also contains numerous other inadequacies among them, failure to state with

particularity the circumstances constituting fraud, and failure to name spouses as plaintiffs while

asserting loss of consortium, or to show whether, if the spouses were named as plaintiffs, this court

would have jurisdiction over this diversity action. Furthermore, the court finds that it will be

impossible to set the boundaries of discovery on the basis of this complaint. *See Byrne v. Nezhat*, 261

F.3d 1075, 1129 (11th Cir. 2001).

The court is acutely aware of its duty to dispose of shotgun complaints at the earliest

2

opportunity. *Byrne*, 261 F.3d at 1130.[5] Many defendants have already moved the court to dismiss the plaintiffs' claims against them for failure to state a claim for which relief can be granted, or in the alternative, for a more definite statement. Many are even now heroically struggling to answer the complaint. Rather than wait until justice has been obstructed by the inadequacies of this complaint and "scarce judicial and prejudicial resources" are further wasted, the court *sua sponte* dismisses this case as to all defendants without prejudice and with leave to refile a complaint that complies with all the requirements of the Federal Rules of Civil Procedure within 20 days of the date of this order.

In filing their amended complaint, plaintiffs should be mindful of the Eleventh Circuit's suggestion to district courts regarding those who file shotgun pleadings: "[i]f use of an abusive tactic is deliberate and actually impedes the orderly litigation of the case, to-wit: obstructs justice, the perpetrator could be cited for criminal contempt." *Byrne*, 261 F.3d at 1131-32. The court is aware that the plaintiffs' nearly identical case has already been dismissed from the Circuit Court of Jefferson County, Alabama.

---

[5] In *Byrne*, the Eleventh Circuit detailed the many evils a court would countenance by allowing a case to proceed on the basis of a shotgun complaint such as the one presently before the court–among them, "obstruction of justice," the potential for extortion, "watering down the rights of parties...to litigate efficiently," and "consuming an inordinate amount of the court's time," while "justice is delayed, if not denied, to other litigants who are standing in the queue waiting to be heard." *Byrne*, 261 F.3d at 1130, 1131. The Eleventh Circuit observed in *Byrne*: "Why...would a lawyer engage in shotgun pleading? Plaintiffs file shotgun complaints and include frivolous claims to extort the settlement of a meritorious claim; worse yet, they file shotgun complaints to extort the settlement of unmeritorious claims." *Id.* at 1130.

3

The pending motions to dismiss (docs. 28, 34, 35, 43, 44, 49, 59, 60, 62, 69, 70; and 74) are

MOOT.

Done and ordered this _8th_ day of October, 2004.

Karon O. Bowdre
United States District Judge

# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

SKIP PALMER, *et al.*,  )
                        )
        Plaintiffs,     )
                        )
    vs.                 )        Civil Action Number
                        )        7:04-cv-3262-UWC
AEARO CORPORATION, *et al.*,  )
                        )
        Defendants.     )
                        )
                        )

## ORDER OF DISMISSAL

Based upon the gross inadequacies of the Plaintiff's Complaint, the Court *sua sponte* DISMISSES this case without prejudice and with leave to refile a complaint that complies with all of the requirements of the Federal Rules of Civil Procedure within thirty (30) days of the date of this Order.

"Although the liberal federal rules require only notice pleading, they still require a 'short and plain statement of the claim showing the pleader is entitled to relief'...." "The pleadings still must state a 'cause of action' in the sense that it must show 'that the pleader is entitled to relief;' it is not enough to indicate merely that the plaintiff has a grievance, but sufficient detail must be given so that the defendant, and the court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some legal

1

basis for recovery." *Hoshman v. Esso Standard Oil Co.*, 263 F.2d 499, 501 (5th Cir. 1959)(quoting Fed. R. Civ. P. 8 (a); James Wm. Moore *et al.*, Moore's Federal Practice 1653 (2d ed.).

Neither the Defendants nor the Court can discern from Plaintiff's Complaint a fair idea of what the Plaintiffs are complaining. The Complaint suggests that the Plaintiffs have occupational lung disease, that Plaintiffs were exposed to silica "while working at various work-sites in Alabama," and that all twenty-three (23) Defendants in some way participated in the sand blasting industry. However, it is not clear what Defendants produced which products, and the resulting causes of action related to those products.

The Complaint alleges that different groups of Defendants negligently manufactured equipment, failed to inform of possible danger, *etc.* However, the Complaint does not state when, where, or how the Defendants have injured the Plaintiffs. Furthermore, the Plaintiffs do not explain which causes of action apply to which Defendants. Therefore, the Plaintiffs do not allow the Defendants to adequately defend themselves in response to the Complaint.

Many Defendants have moved this Court to dismiss the Plaintiffs' claims for failure to state a claim for which relief can be granted, or in the alternative a more definite statement. Some Defendants answered the complaint. Rather than rely on the inadequacies of this Complaint, the Court *sua sponte* dismisses this case as to all Defendants with leave to refile a Complaint that complies with all of the requirements of

2

the Federal Rules of Civil Procedure within thirty (30) days of the date of this order.

Done this 31st day of May, 2005.


U.W. Clemon
Chief United States District Judge

# Exhibit 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| VERA . BEAVERS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action Number |
| | ) | 2:06-cv-899-UWC |
| A. O. SMITH ELECTRICAL | ) | |
| PRODUCTS COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER OF DISMISSAL

Consistent with the accompanying Memorandum Opinion, this case is

hereby DISMISSED, without prejudice.

The costs of this action are hereby taxed against the Plaintiffs.

_____
U.W. Clemon
Chief United States District Judge

Page 1 of 1.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

VERA . BEAVERS, et al.,                    )
                                           )
        Plaintiffs,                        )
                                           )
vs.                                        )        Civil Action Number
                                           )        2:06-cv-899-UWC
A. O. SMITH ELECTRICAL                     )
PRODUCTS COMPANY, et al.,                  )
                                           )
        Defendants.                        )

## MEMORANDUM OPINION ON MOTIONS TO DISMISS

Presently before the Court are numerous motions to dismiss.[1] Upon review of the complaint and the motions to dismiss, the Court finds this action should be dismissed for lack of jurisdiction.

The nearly 100 individual Plaintiffs allege that they have been injured by exposure to asbestos manufactured or utilized by the various Defendants. Jurisdiction is premised on diversity of citizenship.

The motions to dismiss raise several issues, several of them having

---

[1] Docs. 24, 37, 40, 45, 48, 49, 50, 56, 57, 58, 61, 63, 66, 69, 75, 80, 81, 91, 97.

Page 1 of 3

substantial merit. First, it does not appear that all of claims arise out of the same transaction or occurrence. Further, the complaint does not specifically link specific causes of action to a specific Defendant. Moreover, to the extent that fraud allegations are made, they are not pled with the specificity required by the Federal Rules of Civil Procedure. Finally, the complaint does not allege the dates of exposure to asbestos, or the dates on which the Plaintiffs discovered their injuries – allegations quite probative in a statute of limitations defense.[2]

But the most compelling reason requiring the dismissal of this action is the simple fact that diversity jurisdiction is absent. It is clear that at least one Plaintiff and at least one Defendant are citizens of the state of California. (*See* Compl. §§ 16, 113.) Additionally, at least one Plaintiff and one Defendant are citizens of the state of Georgia. (*See* Compl. §§ 15, 133.)

For want of diversity jurisdiction, the Complaint must be dismissed.

U.W. Clemon
Chief United States District Judge

---

[2] These deficiencies could probably be cured by a severance of the Plaintiffs and an amended complaint in each of the new cases.

Page 3 of 3

# Exhibit 5

Westlaw.

516 F.3d 955                                                                                    Page 1
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384
(Cite as: 516 F.3d 955)

**C**Davis v. Coca-Cola Bottling Co. Consol.
C.A.11 (Ala.),2008.

United States Court of Appeals,Eleventh Circuit.
Melvin DAVIS, Leander Foster, Michael A. Fox,
Randolph Hatcher, Terry R. Jackson, Warren Law,
Jr., Attress Logan, Lorenzo Martin, Watson, Sgt.,
Plaintiffs-Appellants,
v.
COCA-COLA BOTTLING CO. CONSOLIDATED,
Defendant-Appellee.
No. 05-12988.

Feb. 6, 2008.

**Background:** Black employees brought suit to
recover under Title VII and civil rights statute for
their employer's alleged racial discrimination and
retaliatory acts, and the United States District Court
for the Southern District of Alabama, No. 02-00629-
CV-CB-M,Charles R. Butler, Jr., J., entered order
dismissing "pattern or practice" claim and granted
employer's motion for summary judgment on
remaining claims, and employees appealed.

**Holdings:** The Court of Appeals, Tjoflat, Circuit
Judge, held that:
(1) individual black employees who were allegedly
discriminated against pursuant to alleged pattern or
practice of discrimination by company that employed
them could not prosecute a "pattern or practice"
claim for declaratory and injunctive relief against this
alleged practice without being certified as class
representatives;
(2) actions of which black employees complained
were discrete acts, not acts that were part of hostile
work environment, on which statute of limitations
began to run when acts were committed;
(3) conclusory allegations in black employees'
complaint were insufficient to satisfy "notice"
pleading standard;
(4) black employees failed to establish prima facie
case of discrimination; and
(5) "shotgun" pleading approach adopted by both
parties counseled against award of attorney fees.

Affirmed in part, vacated in part and remanded.

[1] Declaratory Judgment 118A ☞305

118A Declaratory Judgment
    118AIII Proceedings
        118AIII(C) Parties
            118Ak305 k. Representative or Class
Actions. Most Cited Cases

**Federal Civil Procedure 170A ☞184.10**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak184 Employees
                    170Ak184.10 k. Discrimination and
Civil Rights Actions in General. Most Cited Cases
"Pattern or practice" claim for declaratory and
injunctive relief against ongoing act of intentional
discrimination in violation of Title VII may be
brought as class action, on theory that employer has
acted or refused to act on grounds generally
applicable to members of employee class, by one or
more of the similarly situated employees. Civil
Rights Act of 1964, § 701 et seq., 42 U.S.C.A. §
2000e et seq.; Fed.Rules Civ.Proc.Rule 23(b)(2), 28
U.S.C.A.

[2] Civil Rights 78 ☞1571

78 Civil Rights
    78IV Remedies Under Federal Employment
Discrimination Statutes
        78k1569 Monetary Relief; Restitution
            78k1571 k. Back Pay or Lost Earnings.
Most Cited Cases

**Civil Rights 78 ☞1583(2)**

78 Civil Rights
    78IV Remedies Under Federal Employment
Discrimination Statutes
        78k1578 Relief from Retaliation
            78k1583 Monetary Relief
                78k1583(2) k. Back Pay or Lost
Earnings. Most Cited Cases

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

516 F.3d 955
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384
(Cite as: 516 F.3d 955)

In class action asserting "pattern or practice" claim for declaratory and injunctive relief against ongoing act of intentional discrimination in violation of Title VII, plaintiffs' complaint, in addition to praying for declaratory and injunctive relief, may also seek backpay on behalf of individual class members who have been injured by employer's discriminatory practice. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

[3] Civil Rights 78 🔑1139

78 Civil Rights
    78II Employment Practices
        78k1139 k. "Pattern or Practice" Claims. Most Cited Cases
"Pattern or practice" claim may be brought, not only under Title VII, but under civil rights statute that guarantees members of minority the same contract rights as those enjoyed by similarly situated white persons, in which case Title VII's substantive rules inform the rules of decision. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; 42 U.S.C.A. § 1981.

[4] Federal Civil Procedure 170A 🔑184.10

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak184 Employees
                    170Ak184.10 k. Discrimination and Civil Rights Actions in General. Most Cited Cases
Prior to adjudicating "pattern or practice" claim as class action, court must first determine whether the named plaintiff has standing to prosecute claim on behalf of similarly situated employees. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

[5] Declaratory Judgment 118A 🔑305

118A Declaratory Judgment
    118AIII Proceedings
        118AIII(C) Parties
            118Ak305 k. Representative or Class Actions. Most Cited Cases

Federal Civil Procedure 170A 🔑184.10

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak184 Employees
                    170Ak184.10 k. Discrimination and Civil Rights Actions in General. Most Cited Cases
Only someone who claims he has been, or is likely to be, harmed by ongoing discriminatory practice has adequate stake in litigation to have standing to prosecute, on behalf of employee class, a class action asserting "pattern or practice" claim for declaratory and injunctive relief under Title VII. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

[6] Federal Civil Procedure 170A 🔑184.10

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak184 Employees
                    170Ak184.10 k. Discrimination and Civil Rights Actions in General. Most Cited Cases
If named plaintiff in class action asserting "pattern or practice" claim for employer's alleged intentional discrimination in violation of Title VII does not have standing to sue, then he cannot prosecute "pattern or practice" claim, and unless an employee who has been, or is likely to be, harmed by discriminatory practice is substituted as named plaintiff, claim will fail. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

[7] Declaratory Judgment 118A 🔑305

118A Declaratory Judgment
    118AIII Proceedings
        118AIII(C) Parties
            118Ak305 k. Representative or Class Actions. Most Cited Cases

Federal Civil Procedure 170A 🔑184.10

170A Federal Civil Procedure
    170AII Parties

516 F.3d 955                                                                                                    Page 3
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384
**(Cite as: 516 F.3d 955)**

170AII(D) Class Actions
  170AII(D)3 Particular Classes Represented
    170Ak184 Employees
      170Ak184.10 k. Discrimination and
Civil Rights Actions in General. Most Cited Cases
In class action asserting "pattern or practice" claim
for declaratory and injunctive relief against ongoing
act of intentional discrimination in violation of Title
VII, once court determines that the named plaintiff
has standing to sue, it must then determine whether
preliminary requirements for certification of plaintiff
class, i.e., the requirements of numerosity,
commonality, typicality, and adequacy, are met and
whether defendant has acted or refused to act on
grounds that apply generally to class. Civil Rights
Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et
seq.; Fed.Rules Civ.Proc.Rule 23(a), (b)(2), 28
U.S.C.A.

**[8] Declaratory Judgment 118A ⟲305**

118A Declaratory Judgment
  118AIII Proceedings
    118AIII(C) Parties
      118Ak305 k. Representative or Class
Actions. Most Cited Cases

**Federal Civil Procedure 170A ⟲184.10**

170A Federal Civil Procedure
  170AII Parties
    170AII(D) Class Actions
      170AII(D)3 Particular Classes Represented
        170Ak184 Employees
          170Ak184.10 k. Discrimination and
Civil Rights Actions in General. Most Cited Cases
In class action asserting "pattern or practice" claim
for declaratory and injunctive relief against ongoing
act of intentional discrimination in violation of Title
VII, once court determines that standing and class
certification requirements are met, and once it finds
that employer has engaged in ongoing practice of
discrimination against plaintiff class, declares that
practice invalid and enjoins employer from engaging
in practice, case then advances to the second stage, at
which individual class members may seek redress for
injuries sustained, perhaps in separate proceedings.
Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A.
§ 2000e et seq.; Fed.Rules Civ.Proc.Rule 23(b)(2), 28
U.S.C.A.

**[9] Civil Rights 78 ⟲1535**

78 Civil Rights
  78IV Remedies Under Federal Employment
Discrimination Statutes
    78k1534 Presumptions, Inferences, and
Burden of Proof
      78k1535 k. In General. Most Cited Cases

**Civil Rights 78 ⟲1544**

78 Civil Rights
  78IV Remedies Under Federal Employment
Discrimination Statutes
    78k1543 Weight and Sufficiency of Evidence
      78k1544 k. In General. Most Cited Cases
At second stage of class action asserting "pattern or
practice" claim for declaratory and injunctive relief
under Title VII, because court's finding of pattern or
practice of discrimination has changed the position of
employer to that of a proven wrongdoer, each class
member seeking redress may rely on that finding as
circumstantial evidence that employer made the
challenged employment decision with intent to
discriminate, and employer bears burden of proving
that the challenged decision, made when
discriminatory practice was in force, was not made in
pursuit of that practice but was, instead, made
because claimant was unqualified for the benefit he
sought. Civil Rights Act of 1964, § 701 et seq., 42
U.S.C.A. § 2000e et seq.; Fed.Rules Civ.Proc.Rule
23(b)(2), 28 U.S.C.A.

**[10] Civil Rights 78 ⟲1536**

78 Civil Rights
  78IV Remedies Under Federal Employment
Discrimination Statutes
    78k1534 Presumptions, Inferences, and
Burden of Proof
      78k1536 k. Effect of Prima Facie Case;
Shifting Burden. Most Cited Cases

**Declaratory Judgment 118A ⟲305**

118A Declaratory Judgment
  118AIII Proceedings
    118AIII(C) Parties
      118Ak305 k. Representative or Class
Actions. Most Cited Cases

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

516 F.3d 955                                                                    Page 4
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384
(Cite as: 516 F.3d 955)

**Federal Civil Procedure 170A ☞184.10**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak184 Employees
               170Ak184.10 k. Discrimination and
Civil Rights Actions in General. Most Cited Cases
In class action asserting "pattern or practice" claim
for declaratory and injunctive relief against ongoing
act of intentional discrimination in violation of Title
VII, if court denies plaintiffs relief at first stage of
proceeding, because the named plaintiff failed to
establish the alleged pattern or practice, class claim is
dismissed, and all that remains are claims of
individual class members, which will be litigated
under the familiar *McDonnell Douglas* burden-
shifting framework. Civil Rights Act of 1964, § 701
et seq., 42 U.S.C.A. § 2000e et seq.; Fed.Rules
Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

**[11] Declaratory Judgment 118A ☞305**

118A Declaratory Judgment
   118AIII Proceedings
      118AIII(C) Parties
         118Ak305 k. Representative or Class
Actions. Most Cited Cases

**Federal Civil Procedure 170A ☞184.10**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak184 Employees
               170Ak184.10 k. Discrimination and
Civil Rights Actions in General. Most Cited Cases
Individual black employees who were allegedly
discriminated against pursuant to alleged pattern or
practice of discrimination by company that employed
them could not prosecute a "pattern or practice"
claim for declaratory and injunctive relief against this
alleged practice without being certified as class
representatives. Civil Rights Act of 1964, § 701 et
seq., 42 U.S.C.A. § 2000e et seq.; Fed.Rules
Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

**[12] Civil Rights 78 ☞1505(7)**

78 Civil Rights
   78IV Remedies Under Federal Employment
Discrimination Statutes
      78k1503 Administrative Agencies and
Proceedings
         78k1505 Time for Proceedings; Limitations
            78k1505(7) k. Continuing Violations;
Serial, Ongoing, or Related Acts. Most Cited Cases

**Limitation of Actions 241 ☞58(1)**

241 Limitation of Actions
   241II Computation of Period of Limitation
      241II(A) Accrual of Right of Action or
Defense
         241k58 Liabilities Created by Statute
            241k58(1) k. In General. Most Cited
Cases
Conduct of which black employees complained in
cause of action under Title VII and under federal civil
rights statute, consisting of employer's allegedly
discriminatory hiring decisions, alleged
discrimination in work assignments, and retaliation,
constituted discrete acts, not acts that were part of
hostile work environment, on which statute of
limitations began to run when acts were committed.
Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A.
§ 2000e et seq.; 42 U.S.C.A. § 1981.

**[13] Federal Courts 170B ☞915**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(K) Scope, Standards, and Extent
         170BVIII(K)7 Waiver of Error in Appellate
Court
            170Bk915 k. In General. Most Cited
Cases
Argument that was not included in appellants'
opening brief was deemed abandoned, and was not
somehow resurrected simply because argument was
presented in appellants' reply.

**[14] Federal Courts 170B ☞947**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(L) Determination and Disposition

516 F.3d 955                                                                                    Page 5
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384
**(Cite as: 516 F.3d 955)**

of Cause
    170Bk943 Ordering New Trial or Other
Proceeding
      170Bk947 k. Further Evidence,
Findings or Conclusions. Most Cited Cases
Upon determining that two of the Title VII claims
dismissed by the district court as untimely were in
fact brought within relevant 180-day limitations
period, the Court of Appeals would not exercise its
discretion to affirm on alternate ground that no claim
for relief was stated, but would remand for further
proceedings in district court, where the Court of
Appeals, after examining the record, could not say
with confidence that employee's claims, viewed
within the *McDonnell Douglas* framework, failed as
matter of law. Civil Rights Act of 1964, § 701 et seq.,
42 U.S.C.A. § 2000e et seq.

[15] Civil Rights 78 ☞1121

78 Civil Rights
    78II Employment Practices
      78k1121 k. Hiring. Most Cited Cases
To establish prima facie case of intentional
discrimination in violation of Title VII, plaintiff must
show: (1) that he is member of protected class; (2)
that he was qualified and applied for position at issue;
(3) that he was rejected; and (4) that position was
filled by person outside the protected class. Civil
Rights Act of 1964, § 701 et seq, 42 U.S.C.A. §
2000e et seq.

[16] Civil Rights 78 ☞1121

78 Civil Rights
    78II Employment Practices
      78k1121 k. Hiring. Most Cited Cases
When alleged discriminatory conduct of which
employee complains in action under Title VII is
employer's use of informal hiring system in which it
does not post openings, employee makes out prima
facie case by showing that employer had reason to
think that employee was interested in position. Civil
Rights Act of 1964, § 701 et seq, 42 U.S.C.A. §
2000e et seq.

[17] Federal Civil Procedure 170A ☞673

170A Federal Civil Procedure
    170AVII Pleadings and Motions

      170AVII(B) Complaint
        170AVII(B)1 In General
          170Ak673 k. Claim for Relief in
General. Most Cited Cases
Purpose of Federal Rule of Civil Procedure requiring
complaint to contain a short, plain statement of basis
for relief is to give defendant fair notice of what
plaintiff's claim is and grounds upon which it rests.
Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A.

[18] Federal Civil Procedure 170A ☞673

170A Federal Civil Procedure
    170AVII Pleadings and Motions
      170AVII(B) Complaint
        170AVII(B)1 In General
          170Ak673 k. Claim for Relief in
General. Most Cited Cases
In order for complaint to satisfy "notice" pleading
requirement, factual allegations of complaint must be
enough to raise right to relief above the speculative
level. Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A.

[19] Civil Rights 78 ☞1532

78 Civil Rights
    78IV Remedies Under Federal Employment
Discrimination Statutes
      78k1532 k. Pleading. Most Cited Cases
While Title VII complaint need not allege facts
sufficient to make out a classic *McDonnell Douglas*
prima facie case, it must provide enough factual
matter, taken as true, to suggest intentional race
discrimination. Civil Rights Act of 1964, § 701 et
seq, 42 U.S.C.A. § 2000e et seq.

[20] Civil Rights 78 ☞1532

78 Civil Rights
    78IV Remedies Under Federal Employment
Discrimination Statutes
      78k1532 k. Pleading. Most Cited Cases
Conclusory allegations in black employees'
complaint, that they were "denied promotions and
treated differently than similarly situated white
employees solely because of race," were insufficient
to satisfy "notice" pleading standard, and to put
employer on notice that employees were complaining
of fact that white employees, rather than black
complainants, were hired for two supervisory

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

516 F.3d 955                                                                    Page 6
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384
(Cite as: 516 F.3d 955)

positions pursuant to employer's allegedly discriminatory policy of filling the positions by word of mouth without any formal posting; black employees were aware of these two hirings before they filed their complaint and, by specifically citing these hirings, could have raised their right to relief above level of speculation. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A.

[21] Civil Rights 78 ☜1138

78 Civil Rights
    78II Employment Practices
        78k1138 k. Disparate Treatment. Most Cited Cases
Black employees failed to establish prima facie case of discrimination under the *McDonnell Douglas* burden-shifting framework, based on fact that they were not provided light-duty work to accommodate their medical restrictions while white employees were, given complete lack of evidence that there was any light-duty work available within black employees' medical restrictions. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; 42 U.S.C.A. § 1981.

[22] Civil Rights 78 ☜1138

78 Civil Rights
    78II Employment Practices
        78k1138 k. Disparate Treatment. Most Cited Cases
Black employee failed to establish prima facie case of discrimination under the *McDonnell Douglas* burden-shifting framework, based on fact that he was not provided light-duty work to accommodate his medical restrictions while white employees were, given evidence that employee, during time when he should allegedly have been provided with this light-duty work, was back at work in position that he held prior to onset of his disability, albeit with assistance of helper who did the things that his disability precluded him from doing. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; 42 U.S.C.A. § 1981.

[23] Civil Rights 78 ☜1246

78 Civil Rights

78II Employment Practices
    78k1241 Retaliation for Exercise of Rights
        78k1246 k. Particular Cases. Most Cited Cases
Even assuming that black employee might be able to demonstrate the requisite causal connection between his filing of racial discrimination charge with the Equal Employment opportunity Commission (EEOC) and alleged "downgrading" of his job assignment five months later, as required to make out prima facie retaliation claim, employer's unrebutted explanation that reassignment was necessitated by need to accommodate employee's medical disability prevented employee from recovering on unlawful retaliation claim. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; 42 U.S.C.A. § 1981.

[24] Civil Rights 78 ☜1243

78 Civil Rights
    78II Employment Practices
        78k1241 Retaliation for Exercise of Rights
            78k1243 k. Practices Prohibited or Required in General; Elements. Most Cited Cases
To make out prima facie case of retaliation in violation of Title VII, plaintiff must show: (1) that he engaged in statutorily protected expression; (2) that he suffered adverse employment action; and (3) that adverse action was causally related to the protected expression. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[25] Civil Rights 78 ☜1245

78 Civil Rights
    78II Employment Practices
        78k1241 Retaliation for Exercise of Rights
            78k1245 k. Adverse Actions in General. Most Cited Cases
Adverse employment action, such as employee must show in order to make out prima facie case of retaliation in violation of Title VII, must be materially adverse from standpoint of reasonable employee. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[26] Civil Rights 78 ☜1252

78 Civil Rights

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

516 F.3d 955                                                                    Page 7
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384
(Cite as: 516 F.3d 955)

78II Employment Practices
  78k1241 Retaliation for Exercise of Rights
    78k1252 k. Causal Connection; Temporal
Proximity. Most Cited Cases
To show that adverse employment action was
causally related to employee's protected expression,
as required to make out prima facie case of retaliation
in violation of Title VII, employee must prove that
the protected activity and the adverse action are not
completely unrelated. Civil Rights Act of 1964, § 701
et seq., 42 U.S.C.A. § 2000e et seq.; 42 U.S.C.A. §
1981.

[27] Civil Rights 78 ⚙⟝1252

78 Civil Rights
  78II Employment Practices
    78k1241 Retaliation for Exercise of Rights
      78k1252 k. Causal Connection; Temporal
Proximity. Most Cited Cases
While causal element of prima facie case of
retaliation in violation of Title VII is interpreted
broadly, merely showing that the alleged adverse
action occurred sometime after the protected
expression does not establish this causation element;
for temporal progression to be enough, events must
be in very close proximity. Civil Rights Act of 1964,
§ 701 et seq., 42 U.S.C.A. § 2000e et seq.; 42
U.S.C.A. § 1981.

[28] Civil Rights 78 ⚙⟝1225(3)

78 Civil Rights
  78II Employment Practices
    78k1215 Discrimination by Reason of
Handicap, Disability, or Illness
      78k1225 Accommodations
        78k1225(3) k. Particular Cases. Most
Cited Cases

Civil Rights 78 ⚙⟝1247

78 Civil Rights
  78II Employment Practices
    78k1241 Retaliation for Exercise of Rights
      78k1247 k. Discharge or Layoff. Most
Cited Cases

Civil Rights 78 ⚙⟝1252

78 Civil Rights
  78II Employment Practices
    78k1241 Retaliation for Exercise of Rights
      78k1252 k. Causal Connection; Temporal
Proximity. Most Cited Cases
Black employee could not prevail on claim that his
dismissal, nearly eight months after he filed racial
discrimination charge with the Equal Employment
opportunity Commission (EEOC), was in retaliation
for his filing EEOC charge, both based on lack of
evidence of causal connection between these two
events and on unrebutted evidence that, at time
employee was terminated, there was no longer any
work available to accommodate his disability;
employer did not have obligation to create job to
accommodate employee's medical limitations. Civil
Rights Act of 1964, § 701 et seq., 42 U.S.C.A. §
2000e et seq.; 42 U.S.C.A. § 1981.

[29] Federal Civil Procedure 170A ⚙⟝948

170A Federal Civil Procedure
  170AVII Pleadings and Motions
    170AVII(J) Bill of Particulars; More Definite
Statement
      170AVII(J)1 In General
        170Ak947 Necessity
          170Ak948 k. To Prepare Responsive
Pleading. Most Cited Cases
Defendant's remedy, when plaintiff files "shotgun"
complaint that purports to combine in one count
multiple claims of different plaintiffs, is to move
court for more definite statement.

[30] Federal Civil Procedure 170A ⚙⟝955

170A Federal Civil Procedure
  170AVII Pleadings and Motions
    170AVII(J) Bill of Particulars; More Definite
Statement
      170AVII(J)1 In General
        170Ak955 k. Order on Court's Own
Motion. Most Cited Cases

Federal Civil Procedure 170A ⚙⟝1105.1

170A Federal Civil Procedure
  170AVII Pleadings and Motions
    170AVII(N) Striking Pleading or Matter
Therein

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

516 F.3d 955                                                                                                          Page 8
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384
(Cite as: 516 F.3d 955)

170Ak1105 Grounds
  170Ak1105.1 k. In General. Most Cited
Cases

**Federal Civil Procedure 170A ⟲1142**

170A Federal Civil Procedure
  170AVII Pleadings and Motions
    170AVII(N) Striking Pleading or Matter
Therein
      170Ak1142 k. Order on Court's Own
Motion. Most Cited Cases
When defendants, when confronted with "shotgun"
complaint that purported to combine in one count
multiple claims of different plaintiffs, did not move
for more definite statement, but instead elected to
reply in kind, by fashioning affirmative defenses that
failed to respond explicitly to the specific claims
plaintiffs were independently asserting, the district
court, acting sua sponte, should have struck plaintiff's
complaint and defendants' answer, and instructed
plaintiff's counsel to file more definite statement.

**[31] Declaratory Judgment 118A ⟲305**

118A Declaratory Judgment
  118AIII Proceedings
    118AIII(C) Parties
      118Ak305 k. Representative or Class
Actions. Most Cited Cases

**Federal Civil Procedure 170A ⟲175**

170A Federal Civil Procedure
  170AII Parties
    170AII(D) Class Actions
      170AII(D)2 Proceedings
        170Ak175 k. Time for Proceeding and
Determination. Most Cited Cases
When complaint alleges that employer is engaging in
pattern or practice of race discrimination against class
of similarly situated employees and seeks declaratory
and injunctive relief under Title VII or civil rights
statute, district court must determine without delay
whether plaintiffs are bringing a class action or not,
since rights of putative unnamed class members may
be affected, one way or another. Civil Rights Act of
1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; 42
U.S.C.A. § 1981.

**[32] Civil Rights 78 ⟲1599**

78 Civil Rights
  78IV Remedies Under Federal Employment
Discrimination Statutes
    78k1599 k. Costs and Fees on Appeal. Most
Cited Cases
Authority to award reasonable attorney's fee to
prevailing party in Title VII case extends to the Court
of Appeals. Civil Rights Act of 1964, § 706(k), 42
U.S.C.A. § 2000e-5(k).

**[33] Civil Rights 78 ⟲1599**

78 Civil Rights
  78IV Remedies Under Federal Employment
Discrimination Statutes
    78k1599 k. Costs and Fees on Appeal. Most
Cited Cases
No attorney fees would be awarded by the Court of
Appeals, under provision of Title VII authorizing
court to award reasonable attorney's fee to prevailing
party, where both sides had chosen to resort to
"shotgun" pleading in litigating their claims, a
strategy that complicated the Court's task to no end.
Civil Rights Act of 1964, § 706(k), 42 U.S.C.A. §
2000e-5(k).

Robert L. Wiggins, Jr., Wiggins, Childs, Quinn &
Pantazis, P.C., Roderick T. Cooks, Winston Cooks,
LLC, Birmingham, AL, for Plaintiffs-Appellants.
Gretchen W. Ewalt, Gregory P. McGuire, Ogletree,
Deakins, Nash, Smoak & Stewart, P.C., Raleigh, NC,
for Defendant-Appellee.
Barbara L. Sloan, EEOC, Washington, DC, for
Amicus Curiae, EEOC.

Appeal from the United States District Court for the
Southern District of Alabama.

Before TJOFLAT and PRYOR, Circuit Judges, and
GEORGE[FN*], District Judge.

TJOFLAT, Circuit Judge:
The plaintiffs in this employment discrimination case
brought under Title VII of the Civil Rights Act of
1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. §
1981, are seven employees and two former
employees of Coca-Cola Bottling Co. Consolidated
("CCBCC"). In their complaint, they allege that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

516 F.3d 955                                                                    Page 9
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384
(Cite as: 516 F.3d 955)

CCBCC is maintaining a "pattern or practice" of discrimination against them and all other similarly situated employees on account of their race, which is black, with respect to hiring, promotion, pay, a racially hostile workplace environment, and light work assignments.[FN1] After the case proceeded through several rounds of pleadings,[FN2] partially dispositive rulings on motions,[FN3] and considerable discovery, plaintiffs' claims of race discrimination under Title VII and § 1981 boiled down to claims that CCBCC: has a pattern or practice of subjectively hiring supervisors, in which qualified blacks are not meaningfully considered;[FN4] preferred whites in awarding light work assignments; maintained a racially hostile work environment; and twice retaliated against one of the plaintiffs for complaining about race discrimination in the workplace.

The district court ruled on the legal sufficiency of these claims on CCBCC's motion for summary judgment.[FN5] First, the court dismissed plaintiffs' pattern or practice claims on the ground that a pattern or practice claim is available only as a class action and plaintiffs had not sought class certification. Next, the court granted CCBCC summary judgment on all of plaintiffs' individual hiring and light duty claims brought under Title VII as time-barred. Finally, the court granted summary judgment on all of plaintiffs' individual § 1981 claims. All but four § 1981 claims-two light duty claims and two retaliation claims-were found time-barred. They were dismissed on the merits, for lack of proof.[FN6]

Plaintiffs now appeal, arguing that the district court erred in holding that a pattern or practice claim (as it relates to the manner in which CCBCC hires supervisors) must be brought as a class action. They also argue that the court erred in dismissing their individual § 1981 claims as time-barred or for lack of proof and all of their Title VII claims as time-barred.[FN7] Finally, plaintiffs complain that the court overlooked several hiring claims that were not explicitly set out in their complaint but were called to the court's attention in their opposition to CCBCC's motion for summary judgment. We affirm the district court's judgment with the exception of two Title VII hiring claims, which we remand for further proceedings.

We begin by describing plaintiffs' employment-in particular, how CCBCC hired supervisors and

assigned light work. We then move to the allegations of the complaint, the district court's summary judgment decision, and our analysis and disposition of the issues plaintiffs raise.

I.

A.

CCBCC is a soft drink production, bottling, and distribution corporation with operations throughout the southeast United States. Plaintiffs Melvin Davis, Leander Foster, Michael Fox, Randolph Hatcher, Terry Jackson, Warren Law, and Attress Logan are current employees at CCBCC's Mobile, Alabama facility; Frederick Watson and Lorenzo Martin are former employees.[FN8] The employees at the Mobile facility are assigned to divisions: production, sales, and truck maintenance. The sales division is subdivided by types of customers and routes: bulk, conventional, cold drink, and full-service. Most of the plaintiffs work in the sales division, delivering drinks to these customers.

Plaintiffs are non-supervisory employees. CCBCC's non-supervisory employees are members of a bargaining unit represented by Local 991 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America ("the union") and are paid by the hour.[FN9] A collective bargaining agreement regulates the terms and conditions of their employment, including the assignment of light work.

Supervisors are non-union and are paid salaries. Because they are non-union, the collective bargaining agreement does not regulate the terms and conditions of their employment. Before plaintiffs filed the EEOC charges that led to this litigation, CCBCC would fill a vacant supervisory position by word of mouth. Management would encourage specific non-supervisory employees to apply for the position and occasionally would solicit applications from outside the company. When the non-supervisory employees learned of a vacancy, some would apply. After all the applications were in, a panel of three-which would normally include the Mobile facility human resources manager, or a member of his staff, and the person responsible for supervising the open position-would interview the applicants. CCBCC ceased the word-of-mouth practice, and began posting vacancies, after

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

516 F.3d 955
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384
(Cite as: 516 F.3d 955)

plaintiffs filed their EEOC complaints. Plaintiffs Jackson, Logan, Fox, and Davis were interviewed for supervisory positions prior to filing their EEOC complaints and before CCBCC changed its word-of-mouth policy.

Regarding light work, the collective bargaining agreement provides that light work within an injured employee's medical restrictions can be assigned when such is available. CCBCC's supervisors determine whether and what type of light work might be available; human resources decides whether the available work fits the restrictions of the injured employee.[FN10]

### B.

The complaint in this case contains three counts, two of which are relevant here.[FN11] Count I, brought under Title VII, alleges that CCBCC discriminates against its black non-supervisory employees, as a class, by maintaining a pattern or practice of race discrimination as to "pay, raises, benefits, ability to advance, and right to be free of racial discrimination, harassment and intimidation, and other terms and conditions of employment." Count I asks that the maintenance of the pattern or practice be declared unlawful and enjoined, and seeks equitable and legal relief for each of the named plaintiffs. Count II incorporates the allegations and prayers for relief of Count I and alleges, in addition, that CCBCC's conduct "deprive[s] plaintiffs of the same ... contract[ ] [rights] as is enjoyed by similarly situated white persons in violation of 42 U.S.C. § 1981." The complaint contains no count in which a plaintiff alleges that he was, or is, a victim of one or more specific features of the above pattern or practice of race discrimination. Rather, the complaint implies-in Counts I and II and the prefatory allegations preceding Count I-that all nine plaintiffs, and all other black non-supervisory employees of CCBCC, have experienced, and are continuing to suffer from, all of the features of the alleged pattern or practice.

As we indicate in our introduction to this opinion, by the time the district court took CCBCC's motion for summary judgment under advisement,[FN12] plaintiffs' claims had been reduced essentially to those we address in this opinion. Plaintiffs' pattern or practice claim, which relates to CCBCC's method of hiring supervisors, had been dismissed because, in the

court's view, a pattern or practice claim can only be maintained as a class action and plaintiffs had not sought class certification.[FN13] What remained of the pattern or practice claim, therefore, were the individual claims: each plaintiff contended that CCBCC had refused to promote him to a vacant supervisory position because of his race. The court granted CCBCC summary judgment on these claims as time-barred under both Title VII and § 1981.[FN14] The court then addressed plaintiffs' light work and retaliation claims, brought under Title VII and § 1981, and held that they were either time-barred or, like plaintiffs' individual hostile work environment claims, failed for lack of proof.[FN15]

We now turn to the issues this appeal presents. We begin with the question of whether the district court erred in ruling that plaintiffs, proceeding individually or collectively rather than as class action representatives, could not prosecute a pattern or practice claim.

### II.

### A.

[1][2][3] Section 707(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-6(a), entitles the Government[FN16] to bring a pattern or practice claim on behalf of a class of similarly situated employees for declaratory and injunctive relief against an ongoing act of intentional discrimination in violation of Title VII.[FN17] A pattern or practice claim for such relief may also be brought under Title VII as a class action, pursuant to Federal Rule of Civil Procedure 23(b)(2), by one or more of the similarly situated employees. See Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 876 n. 9, 104 S.Ct. 2794, 2800, 81 L.Ed.2d 718 (1984) ( "[I]t is plain that the elements of a prima facie pattern-or-practice case are the same in a private class action [as when the Government brings the claim]."). In addition to praying for declaratory and injunctive relief, the complaint may also seek back pay on behalf of individual class members who have been injured by the employer's discriminatory practice. 42 U.S.C. § 2000e-5(g)(1). We have referred to such complaint as presenting a "hybrid Rule 23(b)(2) class action." Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1554 (11th Cir.1986).[FN18]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

516 F.3d 955                                                                                      Page 11
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384
(Cite as: 516 F.3d 955)

[4][5][6] The court must address two issues before proceeding to adjudicate as a class action a pattern or practice claim. First, the court must determine whether the named plaintiff has standing to prosecute the claim on behalf of similarly-situated employees. *See Murray v. U.S. Bank Trust Nat'l Ass'n*, 365 F.3d 1284, 1288 n. 7 (11th Cir.2004). Only someone who claims he has been, or is likely to be, harmed by the ongoing discriminatory practice has an adequate stake in the litigation to satisfy the "case or controversy" requirement of Article III. *See Flast v. Cohen*, 392 U.S. 83, 99-101, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968).[FN18] If the named plaintiff lacks standing to sue, he cannot prosecute the pattern or practice claim, and unless an employee who has been, or is likely to be, harmed by the discriminatory practice is substituted as the named plaintiff, the claim fails.

[7] Second, assuming the named plaintiff has standing to sue, the court must determine whether Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy are satisfied,[FN20] and whether, as required by Rule 23(b)(2), the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief [ ] appropriate respecting the class as a whole."Fed.R.Civ.P. 23(b)(2).

[8][9] If the court resolves these two issues in favor of proceeding with the class litigation and, at the conclusion of the first stage, finds that the employer has an ongoing practice of discrimination against the plaintiff class, declares the practice invalid and enjoins the practice, the case advances to the second stage. There, individual class members may seek redress for injuries sustained, perhaps in separate proceedings. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 361, 97 S.Ct. 1843, 1868, 1855, 52 L.Ed.2d 396 (1977).[FN21] Because the court's "finding of a pattern or practice changed the position of the employer to that of a proved wrongdoer," each class member seeking redress may rely on that finding as circumstantial evidence that the employer made the challenged employment decision with intent to discriminate. *Id.* at 359 n. 45, 97 S.Ct. at 1867.*See also Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1238 n. 18 (11th Cir.2000). In that case, the employer bears the burden of proving that the challenged decision, made when the discriminatory practice was in force, was not made in pursuit of that practice but was, instead, made because that claimant was unqualified for the benefit he sought. *Cox*, 784 F.2d at 1559.

[10] If the court denies the plaintiffs relief in the first stage, however, because the named plaintiff failed to establish the alleged pattern or practice, the class claim is dismissed.[FN22] Hence, all that remains are the claims of the individual class members, and those claims will be litigated under the familiar *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).[FN23]

B.

1.

[11] Plaintiffs argue that nothing in our precedent precludes them, as individuals, from prosecuting a pattern or practice claim for declaratory and injunctive relief without being certified as class representatives,[FN24] and that the district court therefore erred in dismissing their claim.[FN25] We acknowledge that our precedent does not explicitly foreclose plaintiffs' argument; plaintiffs give no indication, however, of comprehending why private pattern or practice claims for such relief must be litigated either as class actions or not at all.

Plaintiffs' complaint-to the extent it implicates CCBCC's practice of hiring supervisors-presented, in essence, a typical hybrid Rule 23(b)(2) class action.[FN26] That is to say, the complaint alleged that CCBCC's word-of-mouth practice of hiring supervisors is ongoing and applies to all black CCBCC employees who, like the named plaintiffs, are qualified to hold supervisory positions that go to white employees and white outsiders. And it all but stated that these black employees constituted a class and that the named plaintiffs were representing them. We say this because the complaint asked for the type of relief stage one of a Rule 23(b)(2) class action would afford-a declaration that the word-of-mouth hiring practice discriminated against blacks and an injunction against its continued use-relief that would inure to the benefit not only of the named plaintiffs but to similarly situated black employees as well. The complaint also presented the claims of the individual plaintiffs in the form of back pay and other monetary

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

relief, stage two of a hybrid Rule 23(b)(2) class action.

A Rule 23(b)(2) class certification would give the named plaintiffs standing to represent the claims of the unnamed class members for declaratory and injunctive relief. Without Rule 23(b)(2) certification, however, the named plaintiffs lack standing to pursue such relief for themselves, because the complaint did not allege a likelihood that they will be denied a supervisory position in the future.[FN27] See City of Los Angeles v. Lyons, 461 U.S. 95, 106 n. 7, 103 S.Ct. 1660, 1667, 75 L.Ed.2d 675 (1983) (To have constitutional standing to seek injunctive relief, a "[plaintiff] would have to credibly allege that he faced a realistic threat from the future application of the [defendant's] policy."). And as a prudential matter, absent Rule 23(b)(2) certification, they lack standing to represent the absent unnamed class members.[FN28] United Food and Commercial Workers v. Brown Group, 517 U.S. 544, 557, 116 S.Ct. 1529, 1536, 134 L.Ed.2d 758 (1996) ( " '[T]he general prohibition on a litigant's raising another person's legal rights' is a 'judicially self-imposed limit on the exercise of federal jurisdiction,' not a constitutional mandate.") (quoting Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984)). In short, plaintiffs lacked standing to obtain the sort of declaratory and injunctive relief Title VII provides—an employee class under Rule 23(b)(2)—the broad scope of relief Congress envisioned in enacting section 707(a) of the Civil Rights Act of 1964.[FN29]

The prudence of the general prohibition on third-party standing is particularly acute in the employment discrimination context. When a complaint appears, as here, to constitute a class action, the statute of limitations is tolled as of the date the complaint is filed, and it remains tolled until the court rejects class certification or the case comes to an end. See American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 552-53, 94 S.Ct. 756, 765-66, 38 L.Ed.2d 713 (1974). Potential class members need to know where they stand; are they to become members of a certified class, or must they proceed with their own lawsuits? May they piggyback on the named plaintiffs' EEOC charges, or must they file their own? See Albemarle Paper Co. v. Moody, 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280 (1975).

Most important, perhaps, are the potential res judicata

and collateral estoppel issues that would arise if the law permitted an individual to prosecute a pattern or practice claim without formally representing all similarly-situated employees. As it stands, if a class is certified and the employer prevails on the pattern or practice issue, unnamed class members would be barred by res judicata from asserting the pattern or practice claim in a separate proceeding, even though they might retain their individual disparate treatment actions against the employer. If a class is not certified and the employee prevails, however, whether the unnamed class members would be barred by the doctrine of issue preclusion from proceeding against the employer would be problematical.

Here, plaintiffs sought declaratory and injunctive relief in their complaint, thus appearing to represent that they were prosecuting a pattern or practice claim on behalf of CCBCC's black non-supervisory employees at the Mobile facility. But they did not ask the court to certify the class. The court therefore assumed-and we speculate here because the record is silent on the point-that plaintiffs did not intend to seek certification, and entered an order, on CCBCC's first Rule 12(c) motion for judgment on the pleadings, holding that plaintiffs could not prosecute their pattern or practice claim as if they were prosecuting a class action under Rule 23(b)(2). Finally, by the time the court took CCBCC's motion for summary judgment under advisement, plaintiffs had all but formally abandoned their prayer for declaratory and injunctive relief on their pattern or practice claim. In sum, the district court did not err in dismissing plaintiffs' pattern or practice claim qua claim.[FN30]

2.

Anticipating our holding, plaintiffs argue that the pattern or practice allegations and the evidence they presented in support thereof were intended to perform two functions in addition to serving as the basis for an independent, free-standing claim: (1) to avoid the Title VII and § 1981 time-bars, and (2) to shift to the employer, as wrongdoer under both statutes, the burden of proving that its refusal to hire them as supervisors was not made in pursuit of its unlawful pattern or practice, but was made instead for a race-neutral reason.[FN31] We do not reach the second function because the district court denied relief on plaintiffs' hiring claims on the ground that they were

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

516 F.3d 955
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384
(Cite as: 516 F.3d 955)

time-barred.[FN12] We do, however, reach the first function and determine the time-bar issues.

### III.

[12] Plaintiffs contend that CCBCC's pattern or practice of race discrimination constituted a "continuing violation."[FN13] Accordingly, they argue, neither Title VII's 180-day limitations period nor § 1981's borrowed statutes of limitations-two years for hiring and four years for light work assignments-bars recovery for a hiring or light work event that occurred prior to these limitations periods. The district court held that these events constituted discrete acts of discrimination, and therefore were subject to the relevant time bars.

National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), involved claims by a former employee that his employer had engaged in discrete acts of race discrimination and retaliation and had maintained a racially hostile work environment. The Supreme Court held that if the act gives rise to a cause of action under Title VII, then it is subject to Title VII's 180-day limitations period. Id. at 114-15, 122 S.Ct. at 2073. The acts the employee complained of were actionable and occurred prior to the 180-day period, so they were barred. As for the hostile work environment claim that spanned the 180-day period, the Court held the claim actionable, even though some of the acts establishing the claim occurred outside that limitations period. Id. at 117, 122 S.Ct. at 2074.[FN14] This court has applied Morgan's teaching to claims under § 1981 as well as Title VII. Shields v. Fort James Corp., 305 F.3d 1280, 1282 (11th Cir.2002).

In this case, CCBCC's hiring decisions, light work assignments, and alleged retaliation constituted discrete acts, not acts that were part of a hostile work environment. In that plaintiffs' pattern or practice allegations could not avoid the Title VII and § 1981 time-bars applicable to these acts, the district court did not err in treating such acts as discrete acts under Morgan and in holding some of them time-barred.[FN15] What remains for our decision is whether the court erred in holding three Title VII hiring claims time-barred and in rejecting on the merits three § 1981 light work claims, one of which was brought under Title VII as well, and two § 1981

retaliation claims.[FN16] In the next part, we take up the three hiring claims. We also consider whether the court should have recognized sixteen hiring claims not explicitly asserted in plaintiffs' complaint but mentioned in memoranda plaintiffs filed in opposition to CCBCC's motion for summary judgment.[FN17]

### IV.

### A.

Plaintiffs Melvin Davis and Terry Jackson contend that the district court erred in holding their hiring claims time-barred. Davis's claim is based on the hiring of John Gilbert, a white employee, to the position of Bulk Supervisor in "March of 2000."[FN18] Jackson has two claims: the first is based on the hiring of David Presnall, as Production Supervisor, in March 2000; the second is based on the hiring of Paul Schum, as Production Scheduler, in July 2000. Both Presnall and Schum are white. We consider these claims in sequence.

Davis's problem is that plaintiffs' opening brief does not challenge the Gilbert hiring at all. There is no mention of Davis's claim in the brief's Statement of Issues, Statement of Case, or Argument. The only mention of Davis by name in the brief's Statement of Facts, in footnote 3, which repeats the complaint's allegation that "[i]n March 2000, John Gilbert, a white male, was promoted to a position as Bulk Account Manager."Appellants' Br. at 11, n. 3. CCBCC's answer brief says nothing at all about the Gilbert hiring. Plaintiffs' reply brief, though, devotes an entire section to the John Gilbert hiring in March 2000 to the position of Bulk Accounts Manager. The reply brief states for the first time that all of the plaintiffs, which necessarily would include Davis, "established a prima facie case" regarding Gilbert's March 2000 hiring (which was within Title VII's 180-day limitations period). Appellants' Reply Br. at 17.

[13] It is well settled in this circuit that an argument not included in the appellant's opening brief is deemed abandoned. Asociacion de Empleados del Area Canalera v. Panama Canal Comm'n, 453 F.3d 1309, 1316 n. 7 (11th Cir.2006). And presenting the argument in the appellant's reply does not somehow resurrect it. Id.; Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir.2003). The district court denied Davis's

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

516 F.3d 955                                                                      Page 14
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384
(Cite as: 516 F.3d 955)

claim as time-barred. We affirm the court's decision not on the ground that the claim is time-barred, but on the ground that the claim has been abandoned. We proceed now to a consideration of Jackson's claims.

[14][15][16] In granting CCBCC summary judgment, the district court made no mention of Jackson's claims concerning the Presnall and Schum hirings. Rather, the court disposed of them *sub silentio* in stating that all of plaintiffs' hiring claims were time-barred.[FN39] Jackson argues that the two claims-both arising during Title VII's 180-day limitations period-were timely. CCBCC, in its answer brief, admits that the claims are timely. Appellee's Br. at 32. The question thus becomes whether we remand Jackson's claims to the district court for further proceedings on the merits, or exercise our discretion to affirm the court's disposition of the claims on a ground the court did not explicitly consider.[FN40] *See United States v. Simmons, 368 F.3d 1335, 1342 (11th Cir.2004)* ("[W]e have the authority to affirm the district court, even if it is on a ground other than that upon which it based its decision."). We have examined the record and cannot say with confidence that Jackson's claims, viewed within the *McDonnell Douglas* framework, fail as a matter of law.[FN41] We therefore remand them to the district court for further proceedings.

B.

Plaintiffs fault the district court for summarily rejecting some sixteen hiring claims that were set out and argued in the memoranda they filed in opposition to CCBCC's motion for summary judgment, but were not explicitly pled in their complaint. The hirings at issue are the Presnall and Schum hirings in March and July 2000, respectively.[FN42] The court rejected the claims with this cursory statement: "[t]o the extent plaintiffs seek to include additional [hiring] decisions not identified in the complaint, those additional claims are not properly brought in this action."

[17][18][19] Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The point is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)* (quoting *Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)*). To that end, a

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id. at 1965.* Although a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case, *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511, 122 S.Ct. 992, 997, 152 L.Ed.2d 1 (2002)*, it must provide "enough factual matter (taken as true) to suggest" intentional race discrimination. *See Twombly, 127 S.Ct. at 1965.*[FN43]

[20] Plaintiffs argue that their complaint sufficiently pled sixteen individual claims-two for each plaintiff (other than Jackson)-based on the Presnall and Schum hirings. The closest the complaint ever comes to pleading those sixteen claims, however, is when it states plaintiffs were "denied promotions ... and treated differently than similarly situated white employees solely because of [ ] race." That statement epitomizes speculation and therefore does not amount to a short and plain statement of their claim under Rule 8(a). *See id. at 1964.*

Plaintiffs attempt to get around this pleading problem by pointing out that, as alleged in their complaint, they could not cite discriminatory hirings of which they were unaware at the time the complaint was filed; therefore, the Presnall and Schum hirings could not have been cited as having been wrought by CCBCC's secretive hiring policy, which prevented them from knowing when a supervisor was hired. The best they could do, their argument goes, was allege discrimination as to the hirings of which they were actually aware and state generally that they were discriminated against as to other, unknown hirings as well. Once they learned about the Presnall and Schum hirings, they were diligent in bringing those hirings to the court's attention, having done so in their responses to CCBCC's motion for summary judgment.[FN44] They urge that this satisfies the demands of Rule 8(a).

Plaintiffs also point out that they should not be expected to plead in their complaint more facts than necessary to satisfy their a prima facie case under *McDonnell Douglas.* Because a Title VII individual discrimination "prima facie case is designed to include only evidence that is *objectively verifiable* and either easily obtainable or within the plaintiff's possession," *Vessels v. Atlanta Independent School System, 408 F.3d 763, 769 (11th Cir.2005)*, they

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

516 F.3d 955                                                           Page 15
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384
(Cite as: 516 F.3d 955)

should not be required to plead a claim based on a hiring unknown to them.

Plaintiffs' position is unavailing because plaintiffs possessed information about the Presnall and Schum hirings before they filed their complaint. The complaint cites those hirings but only in the context of Jackson's claims. If, as the remaining plaintiffs now contend, they would have applied for those supervisory positions had they known about them, the complaint should have alleged that and claimed that the hirings were discriminatory as to them.[FN45] It is clear, however, that no plaintiff other than Jackson brought claims based on the Presnall and Schum hirings.

### V.

Leander Foster and Warren Law argue that the district court erred in granting summary judgment denying on the merits their § 1981 claims of disparate treatment in CCBCC's denial of their requests for light duty.[FN46] Frederick Watson argues that the court erred in denying three claims. First, CCBCC refused his request for light work on account of his race. Second, CCBCC retaliated against him for filing an EEOC charge on August 1, 2000, by downgrading his job assignment in January 2001. Third, CCBCC discharged him in April 2001 for filing the August 1, 2000 EEOC charge and because of his race. The first claim was timely under § 1981 but not under Title VII; the second claim was not pled in the complaint but would have been timely under § 1981; and the third claim was timely under both § 1981 and Title VII. We first address Foster's and Law's arguments, then Watson's.

### A.

[21] The district court denied Foster's and Law's light duty claims because they failed to establish two elements of a prima facie case under *McDonnell Douglas*: (1) that light work was available at the time they requested it, and (2) that the work was given to a similarly situated white employee. As evidence that the court erred as to the first element, they cite the EEOC "Determination [s]," attached to the complaint as Exhibits B and E, which state: "A union representative states that there is always enough work available to allow for light duty assignments."[FN47] We assume that the court took this statement into account

and that it amounted to proof that light work was available at the time Foster and Law needed it. Their problem is that, as the collective bargaining agreement stipulated, an employee could not be given light work unless it was within his medical restrictions. The complaint does not allege that light work was available within their medical restrictions; nor did Foster or Law respond to CCBCC's motion for summary judgment with proof that it was. As the district court stated in its order granting summary judgment:

> [Plaintiffs] do not cite evidence concerning the nature or duration of their own medical limitations or compare those limitations to those of any of the white co-employees who allegedly were given light duty assignments. They do not identify the types of light duty assignments they might have been able to perform nor offer evidence that any light duty work within their limitations was available at the time of their injuries.

It requires no citation of authority to conclude, as the district court did, that Foster and Law failed to establish their light work claims.

### B.

### 1.

[22] The district court denied Watson's light work claim without explication. The complaint describes the claim with the following language:

> On or about July 26, 1999, Watson suffered an on the job injury which required medical attention. Shortly after being injured, Watson requested to return to work on light duty status. [CCBCC] denied Watson's request on the basis that there were no light duty positions available. CCBCC has allowed several white employees who have sustained similar or worse injuries to return to work in a light duty status. Because Watson was not allowed to return to work in a light duty status, he was forced to apply for workers' compensation benefits, which only equaled sixty-five percent of his regular salary.

This claim was not time-barred;[FN48] thus, we assume that the court considered the claim on its merits and found it patently frivolous and therefore unworthy of comment.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

516 F.3d 955                                                                                                    Page 16
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384
(Cite as: 516 F.3d 955)

Watson was injured while engaged in his Bulk Account Manager duties.[FN48]Between July 26, 1999, and the termination of his employment with CCBCC on April 17, 2001, Watson was attended to in Mobile by American Family Care and eight physicians of varying specialties. Watson returned to work in early August 1999, and continued working as a Bulk Account Manager-at his regular pay of $959 per week-with the aid of an assistant, who performed the tasks Watson could no longer handle. This arrangement lasted until late October 1999. After that, and for a two week period, he was engaged in training a relief salesman. While doing this, he was paid as a Senior Salesman.

Watson's light work claim fails because, during the time he says he should have been given light work, he was back at work as a Bulk Account Manager, albeit with the assistance of a helper who did the things his disability precluded him from doing. By late October 1999, his ability to continue was doubtful, and by January, his physicians concluded that he was totally disabled, on a temporary basis. We find no basis in the record for vacating the court's judgment on this claim and remanding it for submission to a jury.

2.

[23] Watson claims that CCBCC retaliated against him-because of the EEOC charge he had filed on August 1, 2000-after he returned to work in January 2001. The retaliation consisted of what he labels "downgrading" his job assignment. CCBCC referred to it as light work because it fit his medical restrictions. The district court denied the claim on the ground that the complaint did not present it. Alternatively, the court found the claim meritless (1) for lack of a causal connection between the filing of the EEOC charge and the downgrading assignment in January and (2) because EEOC had a lawful reason for the job assignment. We agree with the district court that the claim fails on both grounds.

Plaintiffs' opening brief points to nothing in the complaint that reasonably could be read to allege this claim. Rather, the brief only addresses the merits of the claim, as if it had been well pled, and the record contains some evidence of the circumstances surrounding Watson's return to work.

In January 2000, Watson's physicians found him totally disabled. For fifty-two weeks, he was out of work, drawing temporary total disability workers' compensation benefits at the rate of $550 per week. He remained on temporary total disability until January 2001. By that time, according to his physicians, he had reached maximum recovery, with a permanent partial disability rating, as indicated in the margin.[FN50]He returned to work early that month under permanent restrictions: "No lifting or pulling in excess of 15 pounds on a frequent basis. No lifting or pulling in excess of 30 pounds on an infrequent basis. No carrying in excess of 25 pounds with right arm. No carrying in excess of 15 pounds with left arm."[FN51]CCBCC assigned Watson temporary work that accommodated these restrictions. The work included, in his words, "scrubbing [soft drink] coolers." He scrubbed them "in the mall [and] at high schools on [his] hands and knees."He considered this work demeaning and claims he was assigned to it in retaliation for having filed the EEOC charge on August 1, 2000, while he was out of work drawing temporary total disability benefits.

[24][25][26][27] Employing the framework for deciding retaliation claims under Title VII (which governs retaliation claims under § 1981),[FN52] the court rejected Watson's retaliation claim on two grounds: (1) the filing of the EEOC charge was too remote to his return to work five months later to establish causation, and (2) CCBCC's reason for assigning Watson to the work at issue-that the decision was based on Watson's medical disability-was legitimate and unrebutted. Assuming for our purposes here that whether the filing of the charge was causally related to the work assignment presents an issue of fact sufficient to withstand summary judgment, we are convinced that CCBCC's unrebutted reason for the assignment is unassailable.

3.

[28] Watson claims that his discharge on April 17, 2001, was in further retaliation for having filed the August 1, 2000 EEOC charge and because of his race. The complaint states that
On April 27, 2001, Watson was terminated allegedly because there were no positions available for him to fill with his physical limitations. During this same period, three less senior white employees received sales positions that Watson was qualified

516 F.3d 955                                                              Page 17
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384
**(Cite as: 516 F.3d 955)**

for and could have performed .... Watson was terminated in retaliation for his earlier opposition to race discrimination [, i.e., terminated for filing the EEOC charge on August 1, 2000].

The complaint contains nothing at all that reasonably could be read as an allegation that CCBCC terminated Watson's employment due to race. The district court, in its order granting summary judgment, therefore said nothing about Watson having alleged that his firing was racially motivated. The court did, however, recognize Watson's claim that the firing was retaliatory.

The court held the claim legally insufficient for the same reasons it rejected Watson's claim that the January 2001 downgraded assignment was retaliatory: lack of causation and a lawful, unrebutted reason for the termination. As for the latter ground, CCBCC reasonably concluded that work that Watson could perform given his medical restrictions was unavailable and that it was not required-under Title VII-to create a job that would accommodate his limitations.[FN57]As a consequence, since the retaliatory downgrading claim fails for lack of proof, it follows that the employment termination claim fails as well.

                        VI.

                        A.

If the framers of the Federal Rules of Civil Procedure could read the record in this case-beginning with the plaintiffs' complaint and CCBCC's answer and continuing to the district court's final order granting CCBCC summary judgment-they would roll over in their graves. In fashioning the Rules, they assumed that complaints would be drafted as clearly and definitively as possible, so that the defendant could understand the cause(s) of action the plaintiff was asserting and frame a responsive pleading, and the district court, having a clear and definitive response before it, could recognize the parties' claims and defenses, identify the issues of fact to be litigated, and proceed to a just result. The framers also assumed that the lawyers appearing before the district courts would adhere to the standards of professional responsibility and conduct, and that, as officers of the court, would be aware that the federal courts constitute a scarce resource for resolving disputes and that their failure to adhere to these standards would

likely yield countless untoward, and totally unacceptable, consequences.

This case confounds these assumptions. The complaint is a model "shotgun" pleading of the sort this court has been roundly, repeatedly, and consistently condemning for years, long before this lawsuit was filed.[FN54]And the defendant's answer is no better. Both pleadings were drafted by AV rated law firms whose appearances in district courts of this circuit, and in this court, have been ubiquitous.[FN55]The steps counsel took in litigating their respective clients' interests-the pleading strategies they employed-were not taken out of ignorance; they were deliberate, calculated.

Plaintiffs' complaint, first amended complaint, and second amended complaint are nearly identical, each containing three counts. In part I.B, *supra*, we quoted from Count I what plaintiffs were contending: race discrimination in "pay, raises, benefits, ability to advance, and right to be free of racial discrimination, harassment and intimidation, and other terms and conditions of employment,"[FN56] all in violation of Title VII. This all-encompassing discrimination gave the eight named plaintiffs (and the unnamed members of their class) untold causes of action, all bunched together in one count contrary to the requirements of Federal Rules of Civil Procedure 10(b).[FN57] With one exception-the "ability to advance," which became the foundation for plaintiffs' "promotion" claims-Count I failed explicitly to link a particular plaintiff to a particular cause of action. Count II incorporated the allegations of Count I and added nothing new except to allege that "[t]he effect of the defendant's discrimination as outlined [in Count I] has been to deprive the plaintiffs of the same right to make and enforce contracts as is enjoyed by similarly-situated white persons in violation of 42 U.S.C. § 1981 and 1981(a)." Thus, as in Count I, there was nothing in Count II to indicate which plaintiff possessed which cause(s) of action. [FN58]

No competent lawyer-whether skilled in Title VII litigation or not [FN59]-could compose an answer to these sweeping and multifaceted acts of discrimination that would be in keeping with what the framers of the Rules envisioned in fashioning Rule 8(b).[FN60] Yet, CCBCC's attorneys framed one. They used the same shotgun strategy plaintiffs had employed. Their answer contained fourteen defenses.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

516 F.3d 955                                                                              Page 18
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384
(Cite as: 516 F.3d 955)

The first defense responded to the complaint paragraph by paragraph, admitting or denying the allegations thereof. The second through the fourteenth defenses were affirmative defenses, and except for the seventh defense, consisted of only one sentence. These affirmative defenses did not respond to specific causes of action, because the drafter of the answer could not identify the specific causes of action each named plaintiff was purporting to allege. Consequently, the affirmative defenses referred to none of these plaintiffs by name.[FN61]

Faced with these pleadings, how the district court could have made heads or tails out of plaintiffs' allegations, and which affirmative defenses applied to which causes of action, is beyond us. It took several rounds of pleadings, namely CCBCC's Rule 12(c) motions and the parties' memoranda (dealing with those motions and responding to court orders requesting briefing on other points) for the court even to begin the process of narrowing the issues. In the end, as our preceding analysis of plaintiffs' arguments discloses, the court missed some claims altogether.[FN62]Plaintiffs could have brought this to the court's attention via a motion to alter or amend judgment,[FN63] but chose, instead, to stand pat and leave the matter to us.[FN64]

### B.

The unacceptable consequences of shotgun pleading are many. First, and perhaps foremost, shotgun pleading inexorably broadens the scope of discovery, much of which may be unnecessary.[FN65]Who benefits from that? Certainly not the defendant, especially if it compensates its counsel by the hour. Certainly not the plaintiff-unless his lawyer is trying to attach some value to a frivolous claim. In time, the defendant will ask: "when is all of this to end?"Unless the court has intervened and required the attorneys to replead the case, unless the court has definitively identified the parties' claims and defenses and has squeezed the case down to its bare essentials, defense counsel will be unable to give the client an accurate answer. Plaintiffs' counsel knows this, of course, and that the defendant will want out of the case, to settle. So, the case settles, and the shotgun complaint has performed its designed service. So has defense counsel's acceptance of the shotgun complaint as an appropriate pleading. As we have observed,

Litigating a case framed by shotgun pleadings

obviously harms one or both of the parties. Why, then, would a lawyer engage in shotgun pleading? Plaintiffs file shotgun complaints and include frivolous claims to extort the settlement of a meritorious claim; worse yet, they file shotgun complaints to extort the settlement of unmeritorious claims .... Extortion cuts both ways. Depending on his financial resources, a defendant may use a shotgun answer to obtain a settlement that waters down a meritorious claim. In either situation, the extorted settlement provides a financial benefit to the "prevailing" party and a windfall in the form of fees for the "prevailing" lawyer.

*Byrne v. Nezhat,* 261 F.3d 1075, 1130 (11th Cir.2001) (footnotes omitted).

Second, in addition to delaying a just disposition of the case at the undue expense of one or both of the parties, shotgun pleadings, if tolerated by the court, lessen the time and resources the court has available to reach and dispose of the cases and litigants waiting to be heard.[FN66]This is especially harmful to those who have no other forum for the vindication of their rights.

Third, shotgun pleadings wreak havoc on appellate court dockets. The case at hand is Exhibit A. Due to the nebulous pleadings in this case and the district court's failure to strip the case down and identify each claim and defense, we had to undertake that task from scratch. The briefs and oral argument were of no use until we scoured the record-including the memoranda the parties gave the district court in support of or in opposition to CCBCC's motions for judgment on the pleadings and, subsequently, for summary judgment-to determine whether what the parties stated in their respective briefs was accurate.

The unvarnished truth is that this court puts no credence in briefs written against a backdrop of a case disposed of on shotgun pleadings. We sift through the record for anything that will corroborate a brief's representation; it is not until that task is finished that we look to the briefs for assistance-namely, to determine whether the appellant has preserved the issues its opening brief presents. In this case, after searching the record, we were able to discard much of it as pure waste and thus substantially reduce the length of this opinion. Had

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

we not approached the appeal in this manner, there is no telling how many mistakes we might have made in identifying plaintiffs' claims, the district court's treatment of those claims, and the issues plaintiffs preserved for appeal.

Fourth, the mischief shotgun pleadings causes undermines the public's respect for the courts-the ability of the courts to process efficiently, economically, and fairly the business placed before them.[FN67]At an increasing rate, civil litigants are avoiding the federal district courts; they go elsewhere, to other fora, for the resolution of their disputes, especially complicated commercial disputes.[FN68]The district courts' civil caseloads reflect this. The contemporary litigation culture has effectively reduced the federal court civil dockets, nationwide.[FN69]This is not surprising. The exponentially increasing transaction costs the parties must bear in order to resolve their civil disputes in the federal district courts is driving litigants away, especially those involved in complex commercial matters. This has a negative effect on the development of the rule of law in the federal courts. When issues that ought to be presented to the courts for clarification, and to stabilize the rule of law, are removed to non-judicial fora for resolution, the public bears the cost-in the form of more litigation and a judiciary unable to handle it.

Fifth, in Title VII cases, shotgun pleadings undercut the purpose of Congress's enactment of Title VII-to bring peace and equity to the workplace. It requires no subtle analysis to conclude that the wrangling and pure bitterness these pleadings engender does not foster good employer-employee relationships.

### C.

[29][30] What happened in this case was easily avoidable-by a straightforward application of the Rules of Civil Procedure. First, defense counsel, faced with a complaint purporting to combine in one count multiple claims of eight plaintiffs, should have moved the court for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).[FN70] The court would have granted the motion-"[w]here, as here, the plaintiff asserts multiple claims for relief, a more definite statement, if properly drawn, will present each claim for relief in a separate count, as required by Rule 10(b)."_Anderson v. Dist. Bd. of Trs._

_of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir.1996)_. But counsel chose to reply in kind-by fashioning affirmative defenses that failed to respond explicitly to the specific claims plaintiffs were independently asserting. In light of defense counsel's failure to request a repleader, "the court, acting sua sponte, should have struck the plaintiff's complaint, and the defendants' answer, and instructed plaintiff's counsel to file a more definite statement."_Id. at 367._The necessity for doing so should have become starkly apparent on reading the complaint.[FN71]

[31] The need for intervention was necessary for another reason, apart from the mess the shotgun pleadings were creating: plaintiffs' initial complaint, like its successors, appeared to allege a class action. Where a complaint alleges that the employer is engaging in a pattern or practice of race discrimination against a class of similarly situated employees and seeks declaratory and injunctive relief, the court must determine without delay whether plaintiffs are bringing a Rule 23(b) class action or not.[FN72]The rights of the putative unnamed class members may be affected-one way or another. In this case, had the court inquired of plaintiffs' counsel, and counsel stated that plaintiffs were not bringing a class action, the court would have entered an order stating explicitly that the case was not being prosecuted as a class action.[FN73]This would have informed the putative class members that if they had any claims against CCBCC, they would have to pursue them on their own.

### D.

[32][33]Title VII authorizes the court to award "a reasonable attorney's fee" to the prevailing party in a Title VII case.[FN74]This authority extends to the court of appeals. Here, CCBCC is the prevailing party with the exception of two of Jackson's claims, which are being remanded for further proceedings. As to those claims, Jackson is the prevailing party. Given the manner in which both sides chose to litigate this case in the district court, a strategy that complicated our task to no end, we will deny a request for attorney's fees from either side.

### VII.

For the reasons we have stated, the judgment of the district court is affirmed as to all claims except the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

two Terry Jackson claims we remand for further proceedings.

AFFIRMED, in part; VACATED, in part; and REMANDED.

FN* Honorable Lloyd D. George, United States District Judge for the District of Nevada, sitting by designation.

FN1. Plaintiffs' complaint alleges "across-the-board" employment discrimination, *see e.g., Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156-61, 102 S.Ct. 2364, 2370-72, 72 L.Ed.2d 740 (1982), and prays for declaratory and injunctive relief, back pay, and compensatory and punitive damages and demands a trial by jury.

FN2. This suit has had a convoluted history. Plaintiffs began it by filing a complaint in the district court on August 19, 2002, while the charges of discrimination they had filed with the Equal Employment Opportunity Commission ("EEOC") were still pending. Their original complaint contained the essence of the Title VII claims (which were not ripe) and the § 1981 claims now before us. Plaintiffs amended their complaint shortly after bringing suit, the defendant moved to dismiss it pursuant to Fed.R.Civ.P. 12(c), and the court granted the motion in part in November 2002. Nothing in the court's order, the amended complaint, or the defendant's Rule 12(c) motion is germane in this appeal. On January 3, 2003, the EEOC issued right-to-sue letters to seven of the nine plaintiffs, and on March 23, 2003, plaintiffs filed their second amended complaint. The issues here were framed by that complaint and the defendant's answer. Unless otherwise indicated, the complaint we refer to in this opinion is the second amended complaint, which we label the complaint.

FN3. These motions were, in the main, CCBCC's motions for judgment on the pleadings. *See* Fed.R.Civ.P. 12(c).

FN4. Throughout this litigation, the parties

and the district court have referred to the hiring of supervisors as "promotions." These employment decisions are not, either factually or legally, promotions; they are hirings, as indicated in part I.A, *infra*. CCBCC hires someone-a union member or a person from outside the company-to fill a management position that is clearly non-union. We therefore consider, and refer to, plaintiffs' "promotion" claims as hiring claims brought under Title VII and § 1981.

FN5. The court held some of plaintiffs' claims insufficient on CCBCC's motions for judgment on the pleadings, *see* Fed.R.Civ.P. 12(c), filed in response to plaintiffs' complaint and amended complaint. The complaint pertinent to this appeal is plaintiffs' second amended complaint. *See supra* note 2. We do not address these Rule 12(c) rulings because the claims those rulings held insufficient were re-alleged in the second amended complaint and were rejected either expressly or implicitly by the district court's order granting CCBCC's motion for summary judgment.

FN6. As explained in Part V.B.2, *infra*, the court dismissed one of Frederick Watson's retaliation claims because it was not pled in the complaint, but held alternatively that the claim failed as a matter of law.

FN7. Plaintiffs do not appeal the district court's dismissal of their hostile work environment claims, whether brought under Title VII or § 1981, for lack of proof.

FN8. To simplify discussion, we treat all plaintiffs as current employees unless otherwise indicated.

FN9. The record suggests that at least some sales positions are compensated, at least in part, by commission on sales.

FN10. In its answer to plaintiffs' complaint, CCBCC stated, in its ninth defense, that "some" of plaintiffs' claims "may be preempted by Section 301 of the Labor-

516 F.3d 955                                                                          Page 21
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384
(Cite as: 516 F.3d 955)

Management Relations Act, 1947, 29 U.S.C. § 141," and, in its tenth defense, that "[t]hose claims ... that may be preempted by Section 301 ... fail to state claims upon which relief can be granted because they are barred under Section 301 due to Plaintiffs' failure to exhaust the contractual remedies provided for in their collective bargaining agreement."The record contains bits and pieces of evidence, none probative, that some plaintiffs pressed grievances on some unidentified claims, but the questions raised by these defenses were never presented to, or ruled on, by the district court. Hence, the section 301 issues are not before us.

FN11. Count III, based on Alabama tort law, incorporates Counts I and II and prays for compensatory and punitive damages for, among other things, negligent training and supervision of CCBCC management. Count III is not involved in this appeal.

FN12.*See*Fed.R.Civ.P. 56. CCBCC filed nine motions for summary judgment, one in response to each plaintiff's claims. For our purposes, these motions are treated as one motion.

FN13. The court had dismissed the pattern or practice claim in orders granting CCBCC's motions for judgment on the pleadings. *See supra* note 5. The court dismissed the claim once again on summary judgment, because the claim had been repled and was before the court at that time.

FN14. The court entered its order granting summary judgment on April 26, 2005. The suit had been filed on August 19, 2002. *See supra* note 2.

FN15. As indicated at note 7, *supra,* the hostile work environment claims are not involved in this appeal.

FN16. This right belonged to the Attorney General until it shifted to the EEOC on March 24, 1974. 42 U.S.C. § 2000e-6(c). Now the EEOC, upon reasonable cause, may sue private entities, and the Attorney

General may sue governmental entities. 42 U.S.C. § 2000e-5(f)(1).

FN17. The Supreme Court noted long ago that "[t]he 'pattern or practice' language in § 707(a) of Title VII was not intended as a term of art."*Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 336 n. 16, 97 S.Ct. 1843, 1855, 52 L.Ed.2d 396 (1977) (internal citation omitted). Regardless of what Congress may or may not have intended, the phrase has come through common usage to represent the sum total of the evils Congress intended to attack in § 707(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-6(a).*See, e.g., Cooper v. Fed. Reserve Bank of Richmond,* 467 U.S. 867, 876-77, 104 S.Ct. 2794, 2799-2800, 81 L.Ed.2d 718 (1984). We use it thus.

FN18. A pattern or practice claim may be brought under § 1981 as well as Title VII, in which case Title VII's substantive rules inform the § 1981 rules of decision. *Bass v. Bd. of County Comm'rs,* 256 F.3d 1095, 1109 n. 4 (11th Cir.2001). In 1991, Congress amended § 1981-through the enactment of The Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1071 (codified as amended at 42 U.S.C. § 1981)-to enable plaintiffs to recover compensatory and punitive damages and to demand a trial by jury. Thus, in an employment discrimination suit brought, as here, under Title VII and § 1981, a plaintiff can obtain, in addition to declaratory and injunctive relief under both statutes, back pay under Title VII and § 1981, and compensatory and punitive damages under § 1981. The maintenance of a Rule 23(b)(2) class action for all the relief these two statutes together afford is problematical. *See Cooper v. Southern Co.,* 390 F.3d 695 (11th Cir.2004).

FN19. In particular, a plaintiff must claim facts consistent with the constitutional standing requirements. *Bennett v. Spear,* 520 U.S. 154, 167, 117 S.Ct. 1154, 1163, 137 L.Ed.2d 281 (1997) ("[The] irreducible constitutional minimum of standing requires: (1) that the plaintiffs have suffered

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

516 F.3d 955
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384
(Cite as: 516 F.3d 955)

an injury in fact-an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of-the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.") (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136-37, 119 L.Ed.2d 351 (1992)) (quotations omitted).

FN20.Rule 23(a) reads:
One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

FN21. Claims of individual class members might be tried together to the extent that they presented common issues of fact and the court deemed it efficient to try the claims as a group in order to avoid inconsistent fact findings on the same evidence.

FN22. A caveat to this statement is that if the court finds the alleged pattern or practice to have been maintained, but does not issue an injunction because the likelihood that the practice will continue is nil, the court may enter a declaratory judgment, and the case will proceed to the second stage as if injunctive relief had been entered as well.

FN23. On this point, our opinion in *Reynolds v. Roberts,* 202 F.3d 1303 (11th Cir.2000)(*Reynolds I*), is instructive. In that case, three classes of plaintiffs challenged

the employer's discriminatory policies.*Id.* at 1306.After the beginning of trial, but before the district court made a finding on the issue of liability, the parties entered into settlement negotiations that ultimately resulted in a series of consent decrees. *Id.* at 1307.The court treated a consent decree as an admission of liability on the part of the employer, and ordered it to pay individual damages to certain class members without requiring each member to make out an individual case of discrimination. *Id.* at 1311.We did not agree that the consent decree established the employer's liability and held that "the members of the three plaintiff classes must prove that the [defendant] discriminated against them on account of their race when it failed to hire or promote them ... [and a] member will establish a prima facie case of racial discrimination if he or she satisfies the *McDonnell Douglas* test."*Id.* at 1319.

FN24. Plaintiffs contend that our holding in *Cox,* 784 F.2d 1546, stands as precedent for the proposition that an individual plaintiff, not preceding as a class representative, may bring a pattern or practice claim. Their opening brief says that in *Cox* this circuit held that "individual plaintiffs have the same substantive right to root out a pattern and practice of employment discrimination as do class plaintiffs."Appellant's Brief at 25.
Plaintiffs misconstrue *Cox,* which was a class action case, albeit an odd one. The district court de-certified a class but found as a matter of fact that the defendant employer perpetuated a discriminatory policy. *Id.* at 1558-59.We reversed the court's de-certification order, *id.* at 1558, and explained that the proposed class satisfied the requirements for certification because the members were similarly situated and therefore "were entitled to the presumption that the complained-of employment practices violated Title VII."*Id.* at 1559.The panel never said that Title VII entitles an individual plaintiff to seek declaratory or injunctive relief against a class-wide pattern or practice of discrimination.

FN25. The EEOC, as amicus curiae, agrees, and argues that a pattern or practice claim

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

516 F.3d 955                                                                    Page 23
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384
(Cite as: 516 F.3d 955)

may be brought as an individual action or a class action as the plaintiff chooses.

FN26. This is true as to Count I, which seeks relief under Title VII, and Count II, which incorporates Count I and seeks relief under § 1981. Thus, in this subpart, we do not differentiate between the two counts.

FN27. In the case at hand, none of the plaintiffs has alleged that he will likely be denied a specific hiring, i.e., that a supervisory vacancy for which he would be qualified will become available at some future date. Whether this scenario is likely to occur is pure speculation.

FN28. This point is made clear by the holding in *Franks v. Bowman*, 424 U.S. 747, 755-56, 96 S.Ct. 1251, 1259-60, 47 L.Ed.2d 444 (1976). A class representative can have standing to continuing prosecuting a class action for relief on behalf of the class members even though he has settled his claim against the defendant and his own case is therefore moot.

FN29. Plaintiffs contend that the Rules Enabling Act, 28 U.S.C. § 2072, effectively forecloses the district courts from denying the right of a plaintiff to bring a pattern or practice claim individually, rather than as a class action representative. The Act prohibits the use of a procedural rule to "abridge, enlarge, or modify a substantial right." 28 U.S.C. § 2072(b). In plaintiffs' view, requiring a plaintiff to bring a pattern or practice claim as a class representative-or not at all-abridges the individual plaintiff's substantive right under Title VII to be free from a pattern or practice of discrimination based only on the technical requirements of Rule 23. What we have said in the preceding text indicates why a plaintiff cannot prosecute a pattern or practice *claim* alone. When proceeding alone, the plaintiff lacks third-party standing to represent the absent class members, and unless he can demonstrate a genuine likelihood that the pattern or practice will continue and deprive him of a protected right, he lacks

constitutional standing.

FN30. Several of our sister circuits have already recognized the prudence of limiting a private pattern or practice claim to certified class actions. *See Bacon v. Honda*, 370 F.3d 565, 575 (6th Cir.2004); *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 760-61 (4th Cir.1998), *vacated on other grounds*, 527 U.S. 1031, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 711 (2d Cir.1998).

FN31. Under the *McDonnell Douglas* framework, as described *infra*, once a plaintiff has established a prima facie case that the challenged employment decision was motivated by an intent to discriminate, the *burden of producing* a non-discriminatory reason for the decision is shifted to the employer, but the *burden of proving* that the non-discriminatory reason was the reason for the challenged action is not. In other words, the burden of proof on the issue of whether the employer was guilty of unlawful discrimination remains with the plaintiff. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). By contrast, plaintiffs wanted to establish the alleged pattern or practice in order to shift the burden of proof on the motivation issue to CCBCC at trial. *See Teamsters*, 431 U.S. at 359, 97 S.Ct. at 1866. Thus, at trial, if plaintiffs introduced evidence showing that they and their similarly situated co-employees were all qualified for the supervisory vacancies at issue, as they alleged in their complaint, and that CCBCC had engaged in the pattern or practice alleged, they would have been able to withstand a defense motion for judgment as a matter of law made at the close of the evidence, and the court would have instructed the jury that, if it found the pattern or practice alleged, CCBCC had the burden of proving that the challenged employment decision was not made pursuant to such pattern or practice.

FN32. As we indicate in Part IV.A, *infra*,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

516 F.3d 955                                                                                            Page 24
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384
**(Cite as: 516 F.3d 955)**

the court erred in dismissing three of the hiring claims as time-barred under Title VII. Since we have the authority to affirm a district court's judgment on a ground not reached by the court, we affirm the court's rejection of one of the hiring claims on the ground that the claim has been abandoned. Given the muddled record concerning the two other claims, we decline to consider affirming on a ground the court did not reach.

FN33. Plaintiffs so contend under the assumption that their pattern or practice claim was properly dismissed *qua claim.*This, however, would not render their pattern or practice evidence irrelevant; it could be used to establish a continuing violation that would avoid the time-bar.

FN34. The Court explicitly refrained from considering whether the 180-day limitations period, when applied in the pattern or practice class action context, would bar claims of the individual class members based on acts that occurred prior to that limitations period. *Id.* at 115 n. 9, 122 S.Ct. at 2073.

FN35. The critical dates for determining whether a claim in this case was time-barred are as follows. The 180-day time-bar for the Title VII hiring, light work, and retaliation claims is measured from the date plaintiffs filed their EEOC charges, August 1, 2000. The discriminatory acts occurring before February 4, 2000, were therefore time-barred under Title VII. The two-year time-bar for the § 1981 hiring claims is measured from the date plaintiffs filed this lawsuit, August 19, 2002. The discriminatory hirings occurring before August 19, 2000, were therefore time-barred under § 1981. The four-year time-bar for the § 1981 light work and retaliatory claims is also measured from August 19, 2002. The light work and retaliatory claims occurring before August 19, 1998, were therefore time-barred under § 1981.

Given these dates, the district court properly held the following failure-to-hire claims time-barred

under both Title VII's 180-day and § 1981's two-year limitations periods:

Davis's and Martin's claims arising out of the February 1999 hiring of John Gilbert as Bulk Account Manager;

Foster's, Fox's, and Law's claims arising out of the August 1, 1999 hiring of Jimmy Hassler; the July 1, 1999 hiring of Wyatt Gerald and the August 2, 1999 hiring of Keith Watson; Jackson's claim arising out of the December 21, 1998 hiring of Sheila Morris as a Training Supervisor;

Logan's claim arising out of the June 15, 1999 hiring of Kim Welton as a Sales Representative.

The district court properly held the following failure-to-hire claims time-barred under § 1981's two-year limitations period. The court erred, however, in dismissing them as time-barred under Title VII, as we explain in our discussion in Part IV, *infra.*

Davis's claim arising out of the March 2000 hiring of John Gilbert.

Jackson's claims arising out of the March 27, 2000 hiring of David Presnall and the July 28, 2000 hiring of Paul Schum.

The district court properly held the following failure-to-assign light work claims time-barred under Title VII's 180-day limitations periods:

Law's claim arising in June 1999;

Watson's claim arising on or about July 26, 1999.

FN36. Plaintiff's opening brief cites claims which, it contends, were pled in the complaint and ignored by the district court in its order granting CCBCC summary judgment. The brief argues that they were sufficient to withstand summary judgment, and asks that they be remanded for trial. We list these claims below, as they appear in the complaint. They were brought under both Title VII and § 1981. They are meritless.

CCBCC discriminated against black union

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

516 F.3d 955                                                                                                   Page 25
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384
(Cite as: 516 F.3d 955)

employees by assigning them to "jobs and routes in black communities and to the more difficult assignments in defendant's bottling and production plants." These jobs were subject to the bidding process prescribed by the collective bargaining agreement. None of the plaintiffs alleged, nor in response to CCBCC's motion for summary judgment did he proffer evidence, that he was assigned such work and, if so, whether he bid for it.

CCBCC discharged Lorenzo Martin because of his "race and for his opposition to racial discrimination" on an unspecified date prior to March 28, 2003, the day the plaintiffs filed their second amended complaint. *See supra* note 2. (Plaintiffs' original complaint was filed August 19, 2002, and contains no reference to Lorenzo Martin's discharge.) The Appendix to plaintiffs' opening brief cites, and attaches, the EEOC charge Martin filed on October 4, 2001, complaining of having been discharged on June 16, 2001, and EEOC's Determination regarding the charge. The Appendix states that these two documents were presented to the district court in opposition to CCBCC's motion for summary judgment: the EEOC charge at "R89-1"; and the Determination at "R36-Exh. G", an attachment to the second amended complaint. The record gives no indication that the charge was, in fact, presented to the district court. In the charge, Martin states that he was fired "for allegedly violating company policy in regard to sick days," by not calling his supervisor each day he was absent. "White employees [took] sick leave or other leave without having to notify their supervisor every day they were absent from work." He "believes" that the firing was in retaliation "for filing" his EEOC charge on August 1, 2000. If we err in stating that the charge was not before the district court on summary judgment, the error is of no moment. Martin's self-serving explanation for CCBCC's firing decision lacks probative value. Moreover, his statement about the white employees is rank hearsay and inadmissible for summary judgment purposes.

CCBCC discriminated against Martin on a date not specified by assigning a white employee, instead of him, to a temporary position for eight weeks. The claim fails for alternative reasons. First, Martin did not defend the claim on summary judgment; he thus abandoned it. Second, the record

is undisputed that Martin's supervisor did not want to take him from his route sales job for the temporary assignment because Martin was a "more dependable, and a better salesman" than the white employee, a patently non-discriminatory reason.

CCBCC discriminated against Warren Law on account of his race when a supervisor told him that the company had a facial hair policy; Law had a short beard due to medical restrictions, which were on file. Law does not contend that he was required to shave his beard; his injury is that he felt threatened. This does not constitute an actionable claim.

CCBCC discriminated against Michael Fox on July 20, 2000, by reassigning him "from the sales route he was working, which is considered a desired position," to "a more physically demanding route" and replacing him with a less qualified white employee. CCBCC, responding to the claim in moving for summary judgment, treated it as part of Fox's claim that CCBCC subjected him to a racially hostile work environment. Fox did not respond to this characterization of his claim; in fact, he did not respond to CCBCC's motion for summary judgment. The court denied it as part of its ruling on plaintiffs' racially hostile work environment claim, a claim not before us in this appeal. *See supra* note 7.

FN37. We note that after the court entered summary judgment, plaintiffs did not move the court pursuant to Fed.R.Civ.P. 59(e) to alter or amend its judgment so as to address the merits of these twenty-five claims.

FN38. The complaint states that in "March of 2000, John Gilbert, a white male, was promoted to a position as Bulk Account Manager" and that he "was no better qualified for this position than Davis."

FN39. In their opening brief, plaintiffs assert that the court failed to rule on Jackson's two claims, which would mean that we do not have a final judgment before us, i.e., "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Pitney Bowes, Inc. v. Mestre,* 701 F.2d 1365, 1368 (11th

516 F.3d 955

Page 26

516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384

**(Cite as: 516 F.3d 955)**

Cir.1983) (quoting *Catlin v. United States, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945)*). According to plaintiffs, however, that could not be the case, for, in the Statement of Jurisdiction, the brief states: "Jurisdiction exists as an appeal from a final judgment."Appellant's Br. at 1. CCBCC's answer brief, in the Statement of Jurisdiction, states: "The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1291... as an appeal from a final judgment."Appellee's Br. at 1. To be sure, a partial final judgment entered pursuant to Fed.R.Civ.P. 54(b) would qualify as a final judgment under § 1291, but the court was not asked to and did not enter a Rule 54(b) judgment in this case. What we have, then, is a final judgment in which the court, in its sweeping statement that all Title VII claims are time-barred, included Jackson's claims *sub silentio.*

FN40. In its answer brief, CCBCC does not ask us to do this. It simply requests that we affirm the district court's ruling, referring us to their motion for summary judgment and the plaintiffs' consolidated response to the motion.

FN41. To establish a prima facie case of intentional discrimination, the plaintiff must show that (1) he is a member of a protected class, (2) was qualified and applied for the position at issue, (3) was rejected, and (4) the position was filled by a person outside the protected class.*Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 768 (2005).* Where, as in this case, the employer uses "an informal [hiring] system in which it does not post openings,"*Jones v. Firestone Tire & Rubber Co., 977 F.2d 527, 533 (11th Cir.1992),* the plaintiff makes out a prima facie case by showing that the employer had a reason to think the plaintiff was interested in the position. See *Walker v. Prudential Prop. & Cas. Ins. Co., 286 F.3d 1270, 1275-76 (11th Cir.2002).* In remanding Jackson's claims to the district court, we intimate no view as to whether the claims are amenable to disposition on summary judgment.

FN42. The Argument section of plaintiffs' opening brief explicitly identifies the Presnall and Schum hirings, but, as noted in part IV.A, *supra,* makes no mention of the Gilbert hiring of March or April 2000. Accordingly, the Gilbert hiring is not before us.

FN43. In *Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007),* the Supreme Court considered the pleading sufficiency of a claim under section 1 of the Sherman Act, 15 U.S.C. § 1. It held that a claim under section 1 of the Sherman Act, 15 U.S.C. § 1, must allege facts suggesting an agreement "in restraint of trade or commerce," and that a bald allegation of parallel conduct that may constitute circumstantial evidence of such an agreement is insufficient without more. *Id.* at 1965-66.We understand *Twombly* as a further articulation of the standard by which to evaluate the sufficiency of all claims brought pursuant to Rule 8(a). In that case, the Court retired the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,"*Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957),* saying it "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."*Twombly, 127 S.Ct. at 1969.*The main Rule 8(a) standard now seems to be whether the "allegations plausibly suggest[ ] ([and are] not merely consistent with)" a violation of the law. *Id.* at 1966.

FN44. Plaintiffs responded to CCBCC's motion for summary judgment twice: on November 19, 2003, and January 3, 2005.

FN45. The drafter of the complaint knew how to allege in a non-speculative way specific claims of specific plaintiffs. For example, the complaint presented claims for

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Foster, Fox, and Law based on the respective hirings of Jimmy Hassler, Wyatt Gerald, and Keith Watson in 1999.

FN46. Foster brought his claim under *Title VII* as well as *§ 1981*. Because the standards governing these claims are the same, *Crawford v. W. Elec. Co., 745 F.2d 1373, 1376 (11th Cir.1984)*, we refer to the claim as a *§ 1981* claim.

FN47. The record is silent as to whether Foster and Law presented the alleged wrongful denial of light work to the union in the context of a grievance.

FN48. CCBCC's answer brief does not deny that Watson's *§ 1981* light work claim was timely. Watson brought the claim under *Title VII* as well, but it was untimely, and plaintiffs' opening brief does not assert the contrary.

FN49. The injury was covered, as the parties agreed, by CCBCC's workers' compensation insurance and Alabama's Workers' Compensation statute. *Ala.Code § 25-5-1 et seq.* In early 2000, Watson, represented by counsel not associated with the firm that has represented plaintiffs throughout this litigation, sued CCBCC in the Circuit Court of Mobile County, Alabama, claiming that the injuries he sustained on July 26, 1999, rendered him permanently, partially disabled and seeking compensation therefore. *Watson v. Coca Cola Bottling Co. Consol.*, No. CV-00-3285.51 (Montgomery Cir. Ct.2001). The case was tried to the court on April 9, 2001, and the court entered judgment for Watson on April 17, 2001, finding that he had sustained a permanent "injury to the body as a whole, that he [had] sustained a loss of earning capacity as a result of that injury, and that loss of earning capacity [was] in excess of 34.3%, thereby entitling him to the two hundred twenty dollars ($220.00) per week for the remaining two hundred forty-eight (248) weeks" out of a total of the 300 weeks of disability payments permitted by law. The facts stated in the text following this footnote are drawn for the most part

from the circuit court's "Findings of Fact, Conclusions of Law and Judgment" and to some extent from Watson's deposition.

FN50. *See supra* note 48.

FN51. This quotation is taken from CCBCC's motion for summary judgment. Watson admitted in his deposition that these restrictions were imposed.

FN52. To make out a prima facie case of retaliation, a plaintiff must show that "(1) [he] engaged in statutorily protected expression; (2)[he] suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression."*Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1454 (11th Cir.1998)*. The challenged action must be materially adverse from the standpoint of a reasonable employee.*Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006)*. To show the adverse action was causally related to the employee's protected expression, the plaintiff must prove "that the protected activity and the adverse action are not completely unrelated."*Wideman, 141 F.3d at 1457* (quotation omitted). Although we interpret "the causal link requirement broadly," *EEOC v. Reichhold Chem., Inc., 988 F.2d 1564, 1571 (11th Cir.1993)*, merely showing that the alleged adverse action occurred sometime after the protected expression does not establish the causation element-for temporal progression to be enough, the events must be in "very close" proximity. *See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001)* ("the cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.' ") (citations omitted).

FN53. Implicitly referring to the claim as quoted in the above text, the court concluded

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that the record contained no support for the claim. It said that the time between Watson's EEOC charge and CCBCC's alleged retaliatory response was insufficient to establish a prima facie case, "especially in light of the legitimate nondiscriminatory reason given and the plaintiff's failure to effectively rebut that reason."In other words, the record contained no proof that three white less senior employees were given jobs that Watson was qualified to perform despite his medical restrictions. Watson did identify, in responding to CCBCC's motion for summary judgment, three injured white employees who were given jobs they could perform within their medical restrictions, but he failed to show any similarity between these employees' situations and his-in terms of when they were afforded the light work, what it constituted, and whether it fit his restrictions.

FN54.*See, e.g., United States ex el. Atkins v. McInteer, 470 F.3d 1350, 1354 n. 6 (11th Cir.2006); M.T.V. v. DeKalb County Sch. Dist., 446 F.3d 1153, 1156 n. 1 (11th Cir.2006); Ambrosia Coal and Constr. Co. v. Morales, 368 F.3d 1320, 1330 n. 22 (11th Cir.2004); Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1296 nn. 9-10 (11th Cir.2002); Byrne v. Nezhat, 261 F.3d 1075, 1128-34 (11th Cir.2001); Magluta v. Samples, 256 F.3d 1282 (11th Cir.2001); BMC Indus., Inc. v. Barth Indus., Inc., 160 F.3d 1322, 1326-27 n. 6 (11th Cir.1998); G.JR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1368 (11th Cir.1998); Cramer v. Florida, 117 F.3d 1258, 1263 (11th Cir.1997); Ibrahimi v. City of Huntsville Bd. of Educ., 114 F.3d 162 passim (11th Cir.1997); Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366-67 (11th Cir.1996); Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1567 (11th Cir.1995); Cesnik v. Edgewood Baptist Church, 88 F.3d 902, 905 (11th Cir.1996); Oladeinde v. City of Birmingham, 963 F.2d 1481, 1483-84 (11th Cir.1992); Pelletier v. Zweifel, 921 F.2d 1465, 1518 (11th Cir.1991); T.D.S. Inc. v. Shelby Mut. Ins. Co., 760 F.2d 1520, 1543-44 n. 14 (11th Cir.1986)* (Tjoflat, J.,

dissenting). This list is just a teaser-since 1985 we have explicitly condemned shotgun pleadings upward of fifty times.

FN55. We do not know how many times these law firms have appeared in district courts of this circuit. What we do know is that, over the past decade, the firm (whose name has changed from time to time) representing plaintiffs has appeared in this court in 247 appeals. CCBCC's principal defense counsel is a member of a firm that has appeared in this court in 195 appeals. *See generally,* http://www.martindale.com./Ogletree-Deakins-Nash-Smoak-Stewart/law-firm-22739-peer-review-ratings.htm; http://www.martindale.com/Wiggins-Childs-Quinn-Pantazis/law-firm-22230-people.htm.

FN56. When read as a whole, Count I, in its 121 paragraphs of allegations, portrayed CCBCC as a company that practices race discrimination from top to bottom, in every aspect of the terms and conditions of plaintiffs' employment. In short, race discrimination is the company's culture.

FN57.Rule 8(a)(2), as we observed in part IV.B, *supra,* requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."Rule 10(b) instructs that "Each claim founded upon a separate transaction or occurrence ... shall be stated in a *separate count*... whenever a separation facilitates the clear presentation of the matters set forth."Fed.R.Civ.P. 10(b) (emphasis added.). Plaintiffs' complaint failed to conform to these instructions. The complaint contained in *one count* a host of claims based on discrete acts of discrimination committed by CCBCC against different plaintiffs at different times. As we explained in *Fikes v. City of Daphne, 79 F.3d 1079, 1082-83 (11th Cir.1996),*

These rules work together to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.

*Id.* at 1082-83 (quoting *T.D.S. v. Shelby Mut. Ins. Co.,* 760 F.2d 1520, 1543 n. 14 (11th Cir.1985) (Tjoflat, J., dissenting)).

FN58. The same was true of Count III, which after incorporating Counts I and II en toto, sought compensatory and punitive damages under Alabama tort law.

FN59. According to their representations in Martindale-Hubbell, all the lawyers in this case are skilled in civil litigation, including employment litigation. *See generally,* http://www.martindale.com.

FN60.Rule 8(b)(1) states, in pertinent part: "[A] party must: (A) state in short and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party."Fed.R.Civ.P. 8(b)(1).

FN61. Examples of defense counsel's apparent inability to comprehend exactly what claims a particular named plaintiff was presenting are CCBCC's ninth, tenth, and thirteen defenses. We refer to the ninth and tenth defenses in note 10, *supra,* dealing with the application of section 301 of the Labor-Management Relations Act, where CCBCC referred to "some of the claims" and "those claims" without identifying any of the claims or plaintiffs asserting them. The thirteenth defense was equally ambiguous. It stated that: "Recovery for some or all of the Plaintiffs' claims is barred by the doctrine of laches."

FN62. CCBCC implicitly acknowledges in its brief that the court appears to have ignored Jackson's claims, which were not time-barred.

FN63.*See*Fed.R.Civ.P. 59(e).

FN64. Plaintiffs argued in their opening brief that the court erred in failing to recognize the claims they briefed in opposition to CCBCC's motion for summary judgment. Plaintiffs could have brought those claims to the court's attention via a motion for leave to amend their complaint pursuant to Fed.R.Civ.P. 15(a) before the court took CCBCC's motion under advisement. They evidently believed that such a motion would have been denied as untimely.

FN65. According to the declaration of Gregory P. McGuire, CCBCC's lead counsel, which was filed in relation to CCBCC's motion for summary judgment, the fees charged by the court reporter for "all or any part of the transcript necessarily obtained for use in the case" amounted to $11,118.60.

FN66. Shotgun pleadings delay cases by: Wasting scarce judicial and parajudicial resources imped[ing] the due administration of justice, and, in a very real sense, amount to obstruction of justice. Although obstruction of justice is typically discussed in the context of criminal contempt, the concept informs the rules of law-both substantive and procedural-that have been devised to protect the courts and litigants (and therefore the public) from abusive litigation tactics, like shotgun pleadings. If use of an abusive tactic is deliberate and actually impedes the orderly litigation of the case, to wit: obstructs justice, the perpetrator could be cited for criminal contempt.

*Byrne,* 261 F.3d at 1131-32 (11th Cir.1984) (alteration, quotation, and citation omitted).

FN67. The American Bar Association Model Rules of Professional Conduct, Rule 3.2, and the Alabama Rules of Professional Conduct, Rule 3.2, both provide that, "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."This comment underscores both rules:
Dilatory practices bring the administration of justice into disrepute .... It is not a justification

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

516 F.3d 955                                                                              Page 30
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384
(Cite as: 516 F.3d 955)

that similar conduct is often tolerated by the bench and bar. The question is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay. Realizing financial or other benefit from otherwise improper delay in litigation is not a legitimate interest of the client.

Ala. Rules of Prof'l Conduct R. 3.2 cmt.

FN68. JAMS provides one of these alternative forums. It advertises as the nations largest provider of ADR services and has a cadre of arbitrators and mediators that includes 147 former judges. See http://www.jamsadr.com/neutrals/neutrals.asp.

FN69. Shotgun pleadings are a significant part of the contemporary litigation culture. They are fueled in no small part by the lawyers' fear that if they do not include everything but the kitchen sink in their pleadings, they may be sued for malpractice.

FN70.Rule 12(e) states in pertinent part:
A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must ... point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 10 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Fed.R.Civ.P. 12(e).

FN71. Moreover, in the long run, "the 'judicial work that results from shotgun pleadings is far more time consuming than the work required up front to prevent the case from proceeding beyond the pleadings until the issues are reasonably well defined.'"Byrne, 261 F.3d at 1130 n. 106 (quoting Johnson Enter. of Jacksonville v. FPL Group, Inc., 162 F.3d 1290, 1333 (11th Cir.1998)).

FN72. As stated in Rule 23(c)(1)(A), "When a person sues ... as a representative of a class, the court must-at an early practical time-determine by order whether to certify the action as a class action."

FN73. We recognize that in dismissing plaintiffs' pattern or practice claim on the ground that a pattern or practice claim cannot be brought outside the class action context, the court implicitly held that this was not a class action case. The court made its ruling in response to CCBCC's motion for judgment on the pleadings. Absent such a motion, query whether the court would have addressed the class action issue before ruling on CCBCC's motion for summary judgment.

FN74."In any action or proceeding under [Title VII] the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee (including expert fees) as part of the costs ...."42 U.S.C. § 2000e-(5)(k).

C.A.11 (Ala.),2008.
Davis v. Coca-Cola Bottling Co. Consol.
516 F.3d 955, 102 Fair Empl.Prac.Cas. (BNA) 865, 21 Fla. L. Weekly Fed. C 384

END OF DOCUMENT